THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DONALD R. TOLLIVER, Defendant-Appellant.

Fifth District   No. 5—88—0585

Opinion filed December 6, 1990.

Daniel M. Kirwan and Michelle A. Zaliski, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Kathryn Dobrinic, State's Attorney, of Hillsboro (Kenneth R. Boyle, Stephen E. Norris, and Matthew E. Franklin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE RARICK delivered the opinion of the court:

Defendant Donald Tolliver was charged in the circuit court of Montgomery County with possession of a car title without a complete assignment, a Class 4 felony. Tolliver filed a motion to dismiss prior to trial, alleging that the statute was unconstitutional because it did not give adequate notice of what conduct was prohibited. The motion was denied.

At Tolliver's subsequent bench trial, Larry Schmidt, an investigator for the Secretary of State Police, testified that Thomas Murphy told him that he purchased a car from Tolliver for $200, but shortly thereafter noticed that the title had been signed by David Hayes, not Tolliver. Murphy returned to Tolliver's address within one hour, intending to get Tolliver's signature on the title or his money back, but Tolliver was gone. When Murphy eventually located Tolliver, Tolliver told him that he no longer had the $200 because he had spent it on beer and that Murphy should simply put his name on the title.

On cross-examination, Schmidt admitted the title does not define or explain complete assignments, nor is there any warning that failure to assign the title to a specific person is a violation of the law. Schmidt also testified that he did not contact Hayes to find out to whom Hayes had transferred title, but the State admitted that there was no allegation that Tolliver stole the car or that he otherwise had been attempting to perpetrate a fraud on anyone.

The trial court held that while it was not clear on the face of the title what a person's obligation was, when the purpose of a title is considered, there was no valid lawful reason for not completing it. The only reason a person would not complete it, the court said, was to avoid paying sales tax. Tolliver was found guilty and sentenced to 30 months' conditional discharge, to pay a $500 fine, to perform 120 hours of community service, to get his GED, to remain in school or employed, and to refrain from selling used cars. Tolliver appeals.

█ █ Tolliver's first challenge to the constitutionality of the statute is that the offense of possessing a title without a complete assignment is punished more harshly than similar or related offenses requiring a greater degree of culpability. A sentencing scheme violates the proportional penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, §11) where conduct creating a less serious threat to the public health and safety than other conduct is punished more harshly. (*People v. Wagner* (1982), 89 Ill. 2d 308, 433 N.E.2d 267.) Tolliver maintains while section 4—104(b)(1) of the Illinois Vehicle Code makes possession of a certificate of title without complete assignment a Class 4 felony, section 4—105.1, for example, makes deletion or falsification of information on a title with intent to defraud a Class A misdemeanor. (Ill. Rev. Stat. 1987, ch. 95½, pars. 4—104(b), 4—105.1.) In the former case, Tolliver maintains, no intent to defraud is required and there are many instances where a certificate of title may come into someone's possession without a complete assignment without any criminal intent. In the latter case, however, intent to defraud is required and there are few, if any, legitimate reasons a person would have for deleting or falsifying information on a certificate of title.

Contrary to Tolliver's assertions, as the State points out, section 4—105.1 makes illegal the *surrender* with intent to defraud of a certificate of title in exchange for a new certificate of title which results in the alteration, falsification, or deletion of certain information. Actual alteration of a certificate of title or possession thereof is a Class 2 felony and is punished more harshly than mere possession of a title without complete assignment. (Ill. Rev. Stat. 1987, ch. 95½, pars. 4—104(a)(3), (b)(2), 4—105(a)(1), (b).) We are not persuaded that possession of a title without a complete assignment is less of a threat to public health, safety or welfare than surrendering a title with the intent to fraudulently obtain a new title with altered, falsified, or deleted information and therefore reject Tolliver's first challenge to the constitutionality of the statute. The elements of the offenses Tolliver offers for comparison are not the same, and it is entirely plausible that the legislature considered the evil sought to be remedied by section 4—104(a)(2) to be greater than that punished by section 4—105.1, and it is not for this court to pass judgment on that determination.

█ Tolliver's next challenge is that as a matter of due process, the statute is overbroad and therefore unconstitutional. The legislative exercise of police power is constitutional where the statute in question bears a reasonable relationship to the interest sought to be protected and where the method used to protect that interest is also reasonable. (*People v. Wick* (1985), 107 Ill. 2d 62, 481 N.E.2d 676.) In

*Wick*, our supreme court held that an aggravated arson statute was unconstitutionally overbroad because it did not require an unlawful purpose and so punished innocent as well as culpable conduct. (*Wick*, 107 Ill. 2d at 67-68, 481 N.E.2d at 678.) Likewise, Tolliver argues, section 4—104 requires no culpable intent and therefore punishes innocent as well as culpable conduct.

■■ We must first determine what interest the legislature sought to protect and further, and then determine whether the statute reasonably meets that goal. In *People v. Morris* (1990), 136 Ill. 2d 157, 554 N.E.2d 235, our supreme court found that section 4—104 of the Illinois Vehicle Code was part of a general statutory scheme entitled "ANTI-THEFT LAWS" and that its purpose was to protect automobile owners against theft and the general public against crimes involving stolen automobiles. (*Morris*, 136 Ill. 2d at 162, 554 N.E.2d at 236-37, citing *People v. One 1979 Pontiac Grand Prix Automobile* (1982), 89 Ill. 2d 506, 433 N.E.2d 1301.) The legislative history of section 4—104(a)(2) also indicates that it was directed primarily at "chop shops" and professional car theft operations; however, the court in *People v. Bryant* (1989), 128 Ill. 2d 448, 539 N.E.2d 1221, made it clear that legislative history should not be looked to to determine the purpose of a statute where the language of the statute was clear. We therefore examine section 4—104(a)(2) to determine whether it reasonably advances the legislative intent of protecting the general public against crimes involving stolen automobiles.

■■ Section 4—104(a)(1) makes the unauthorized possession of a certificate of title, blank or otherwise, a Class 4 felony. Section 4—104(a)(2) must be directed at otherwise *authorized* possession of a certificate of title without a complete assignment. To interpret it otherwise would, in light of section 4—104(a)(1), render it mere surplusage. Tolliver argues that section 4—104(a)(2), because it requires no criminal intent, punishes innocent conduct. We agree. We can conceive of numerous circumstances where a person might hold a certificate of title without complete assignment with no intention of committing any crime, including one involving stolen motor vehicles. As worded, the breadth of the statute is far greater than needed to achieve the purpose of section 4—104 and, as such, is unconstitutional.

For the foregoing reasons, the judgment of the circuit court of Montgomery County is reversed.

Reversed.

HARRISON and HOWERTON, JJ., concur.