(No. 71357.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DONALD R. TOLLIVER, Appellee.

*Opinion filed March 12, 1992.*

FREEMAN, J., joined by MILLER, C.J., concurring.

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and Kathryn Dobrinic, State's Attorney, of Hillsboro (Kenneth R. Boyle, Stephen E. Norris, Raymond F. Buckley, Jr., and Kendra S. Mitchell, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Michelle A.

Zalisko, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

Defendant, Donald R. Tolliver, was charged with the offense of possession of title without complete assignment pursuant to section 4—104(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 4—104(a)(2)). Thomas Murphy purchased a car for $200 from defendant. Shortly after the transaction occurred, Murphy noticed that the back of the title had been signed by David Hayes, not defendant. Murphy located defendant intending to get defendant's signature on the title or get his money back, but defendant informed Murphy that he no longer had the $200 and that Murphy should simply sign his name on the title. Nowhere on the title did it define or explain complete assignments of title nor was there a warning that failure to assign the title to a specific person is against the law. Murphy subsequently contacted the Secretary of State. The State's Attorney of Montgomery County subsequently brought charges against defendant.

Defendant filed a motion to dismiss arguing that the statute was unconstitutional in that it failed to give fair notice of what conduct was prohibited under it. The motion was denied and defendant was convicted of possessing a title without complete assignment. The trial court found that there was no valid lawful reason for not completing the title and the only reason an individual would not complete it was to avoid sales tax.

Defendant appealed and the appellate court reversed the trial court's decision. (205 Ill. App. 3d 711, 714.) It found section 4—104(a)(2) unconstitutionally overbroad, as it required no mental state and would punish innocent behavior. The court noted that situa-

tions would exist where someone could possess a certificate of title without a complete assignment with no intention of committing a crime. We accepted this appeal as a matter of right pursuant to Supreme Court Rule 317 (134 Ill. 2d R. 317), as the appellate court held a statute of this State unconstitutional.

Section 4—104(a)(2) provides in part:

"Offenses relating to possession of titles and registration. (a) It is a violation of this Chapter for:

\* \* \*

2. A person to possess any manufacturers certificate of origin, salvage certificate, junking certificate, certificate of title, display certificate without complete assignment;

\* \* \*

(b) Sentence:

1. A person convicted of a violation of subsection 1 or 2 of paragraph (a) of this Section is guilty of a Class 4 felony." Ill. Rev. Stat. 1987, ch. 95½, par. 4—104.

Section 4—104(a)(2) does not prescribe a particular mental state that an accused must have in order to be found guilty. However, this court's recent decision in *People v. Gean* (1991), 143 Ill. 2d 281, held that sections 4—104(a)(1) and (a)(2) are not absolute liability offenses and, because they are not, this court determined that the proper intent necessary for a conviction under these sections was knowledge. (*Gean*, 143 Ill. 2d at 288.) The decision further concluded that knowledge consists of "an awareness of the existence of the facts which make an individual's conduct unlawful." (143 Ill. 2d at 288.) Although this court stated in *Gean* that the State need only prove that an offender possessed a certificate of title knowing it was without complete assignment, we are now persuaded that such knowledge must be expanded to include criminal knowledge or knowledge with an intent to defraud or commit a

crime. Otherwise, the language of section 4—104(a)(2) would create a felony out of conduct that was wholly innocent.

The statute in question is concerned with certificates of automobile title where the assignment section is partially filled out but incomplete. In the instant case, the title owner had signed the document but the name of the buyer had not been filled in. Other potential lacks in other situations which would indicate a less than complete form might be failure or neglect to fill in the odometer reading, failure or neglect to list the lienholder, if any, and failure or neglect to list the address of the transferee or the lienholder. Any such omissions, under a strict reading of the statute, could make the possessor of such a document guilty of a felony. That is why, when the constitutionality of the statute was recently challenged in *Gean*, we concluded that the statute was not an absolute liability offense and that a mental state element was implied. (*Gean*, 143 Ill. 2d at 288.) Otherwise, the statute would have been unconstitutional since a felony penalty cannot be imposed for an absolute liability offense. 143 Ill. 2d at 288.

As defendant points out, there are myriad situations where a person could knowingly possess an incomplete title for innocent reasons. These situations might include circumstances where:

> (1) A friend or family member is selling a car for an elderly or incapacitated person who cannot conveniently leave home. The title is signed at home and the buyer's information is not filled in on the title. The holder then knowingly possesses an incomplete title.

> (2) A person is selling his or her car and signs the title as seller. The buyer then decides not to

complete the purchase of the car. The title is incomplete as there is no information on the certificate of title regarding the buyer. The owner is now knowingly in possession of an incomplete title.

(3) A husband and wife jointly own a car. The wife does not accompany her husband to meet the buyer or dealer. The wife signs the title at home and the husband takes the title to the buyer.

(4) A person is selling his or her car and buying a new car. The dealer instructs the person to bring in the old car with the title and pick up the new car. The owner signs the title before driving over to the dealer to relinquish ownership.

(5) The 'owner of a car signs his own title and puts it away for safe keeping.

All these scenarios could theoretically result in innocent conduct being punished as a felony (Ill. Rev. Stat. 1987, ch. 95½, par. 4—104) even though the offenders lacked any criminal intent. In fact, in the instant case, Murphy, who purchased the car from defendant, also could have been charged with a felony since he knowingly possessed this same incomplete title before he tried to return it.

For purposes of clarity, we include a copy of the assignment portion of the title document. The failure to fill in any portion is a less than complete assignment. Since it cannot be simultaneously signed and completely filled out instantaneously by all parties, the buyers, sellers or middlemen are at risk during the execution process. The execution process can be either stretched out or interrupted for a variety of innocent reasons, some of which have been suggested above. Such innocent but knowing conduct, which is wholly devoid of criminal or devious intent, should not render a person guilty of a felony.

The State has a legitimate interest in preventing car theft, but it has an equally important interest in protecting otherwise innocent conduct from criminal prosecution. *Gean*, which determined that knowledge was sufficient to invoke section 4—104(a)(2), requires refinement so as not to encompass the innumerable situations where individuals knowingly possess incomplete titles for noncriminal reasons. We accordingly modify the "knowledge" required in *Gean* to include that the accused individual possessed the incomplete title with a criminal knowledge, in other words, knowledge plus criminal purpose.

Based on the foregoing, and in accordance with the ruling in *Gean*, we find section 4—104(a)(2) constitutional and, thus, reverse the decision of the appellate court. However, because there was no evidence presented at trial which established that defendant had a criminal purpose and the State admitted there were no allegations that defendant stole the car or attempted to perpetrate a fraud, we also reverse the decision of the circuit court finding defendant guilty of the charged offense. Defendant ordered discharged.

*Appellate court reversed;*
*circuit court reversed.*

JUSTICE FREEMAN, concurring:

I agree with the majority that defendant's conviction should be reversed. However, because I believe that the majority opinion unnecessarily modifies the "knowledge" requirement for section 4—104(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 4—104(a)(2)) set forth in *People v. Gean* (1991), 143 Ill. 2d 281, to mean "criminal knowledge," I concur.

The majority notes that the record contains no evidence that defendant had a criminal purpose and that

the State did not allege that defendant stole the automobile or attempted to perpetrate a fraud. Accordingly, defendant cannot be found guilty of the offense set forth in section 4—104(a)(2). I agree. However, I believe that the majority opinion creates confusion by expressly modifying section 4—104(a)(2)'s mental state requirement from knowledge to "criminal knowledge," or, "knowledge plus criminal purpose." The majority's modification of *Gean*, at the least, confuses the mental state requirement of section 4—104(a)(2) by suggesting that an additional mental state—that of intent or "purpose"—is to be considered along with the knowledge requirement. At the most, the majority's modification of *Gean* unwittingly elevates section 4—104(a)(2)'s mental state requirement.

As the majority points out, this court in *Gean* noted that section 4—104(a)(2) does not explicitly provide a mental state element. *Gean* then held that section 4—104(a)(2) did not set forth an absolute liability offense. This court then looked to section 4—3(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 4—3(b)), which directs that any mental state in sections 4—4, 4—5, and 4—6 of the Code apply to an offense which is not an absolute liability offense, but which does not prescribe a particular mental state. Section 4—4 defines "intent," which involves a "conscious objective or purpose" to accomplish a result or engage in certain conduct. (Ill. Rev. Stat. 1987, ch. 38, par. 4—4.) Section 4—5 defines "knowledge," which involves a person's being "consciously aware" that his or her conduct is of a certain nature or that certain circumstances exist. (Ill. Rev. Stat. 1987, ch. 38, par. 4—5.) Section 4—6 defines "[r]ecklessness," which is found where a person "consciously disregards a substantial and unjustifiable risk." (Ill. Rev. Stat. 1987, ch. 38, par. 4—6.) After considering these provisions, *Gean*

then held that knowledge was the appropriate mental element for an offense under section 4—104(a)(2).

The majority in the instant case looks to *Gean* and expressly modifies the knowledge requirement to mean "knowledge plus criminal purpose." This modification, which apparently attempts to define "knowledge" beyond the scope of its statutory definition, instead confuses the meaning of that mental state element. I also believe that the majority's attempt to further define "knowledge" is unnecessary.

"Knowledge" under the Code implies criminal knowledge. (See *People v. Stewart* (1960), 20 Ill. 2d 387 (applying "knowledge" requirement for the offense of receiving stolen property, referring to requirement as "guilty knowledge"). See also *People v. Baxa* (1971), 50 Ill. 2d 111; *People v. Frazier* (1983), 119 Ill. App. 3d 770.) Section 4—104(a)(2) sets forth one of several offenses which the legislature defined as "relating to possession of titles and registration." Ill. Rev. Stat. 1989, ch. 95½, par. 4—104(a)(2).

Moreover, as this court noted in *Gean*, to establish an offense under section 4—104(a)(2), the State must prove that a defendant possessed certificates of title "knowing that he did not have authority or knowing it was without complete assignment." (*Gean*, 143 Ill. 2d at 289.) In the instant case, as the majority notes, the record shows no evidence that defendant possessed the certificate of title to the automobile knowing, or with a conscious awareness, that he did not have authority or knowing that the certificate was without complete assignment. The simple application of the statutory definition of "knowledge" to the instant offense leads to the result that defendant's conviction cannot stand.

Additionally, although the majority opinion appears merely to expand upon the definition of "knowledge," nevertheless, its modification of the knowledge require-

ment to include "knowledge plus criminal purpose" also may be interpreted as enhancing the mental state requirement from knowledge to intent. The Criminal Code defines "intent" in terms of a "conscious objective or purpose" to accomplish a certain result. (Ill. Rev. Stat. 1987, ch. 38, par. 4—4.) "Knowledge," by contrast, involves only a "conscious[ ] aware[ness]" of one's conduct or of certain circumstances. (Ill. Rev. Stat. 1987, ch. 38, par. 4—5.) Thus, "intent" requires a higher degree of culpability than does "knowledge" under the Code. (See also Robinson, *A Brief History of Distinctions in Criminal Culpability*, 31 Hastings L.J. 815 (1980) (noting that the Model Penal Code sets forth mental states in descending order of culpability: intent (purpose), knowledge, recklessness).) Thus, trial courts may interpret the majority's requirement that the evidence show "knowledge plus criminal purpose" to mean that the evidence must show "intent," as defined by section 4—4 of the Criminal Code.

Because the majority's modification of the mental state element for section 4—104(a)(2) as set forth in *Gean* creates such confusion, I cannot concur in that aspect of the majority's opinion. I would not so extend *Gean*, but rather would apply *Gean* without the modification to reach the same result which the majority reaches in the instant case.

CHIEF JUSTICE MILLER joins in this concurrence.

# APPENDIX

▶ **ODOMETER CERTIFICATION MUST BE COMPLETED**

---

### ASSIGNMENT OF TITLE

The undersigned hereby certifies that the vehicle
described in this title has been transferred to:_____

whose address is_____
with warranty to be free of all encumbrances except as follows:

Lien in favor of_____

whose address is_____

▶ "I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of 99,999 miles.
☐ 2. The odometer reading is not the actual mileage."

"If this vehicle was repossessed by me, or if it is one of more than 5 commercial vehicles owned by me, I certify also that the vehicle is not damaged in excess of 25% of its fair market value."

ODOMETER READING _____

Signature(s) of Seller(s)_____ DATE OF SALE_____

---

### FIRST RE-ASSIGNMENT BY DEALER

The undersigned dealer hereby certifies that the vehicle
described in this title has been transferred to:_____

whose address is_____
with warranty to be free of all encumbrances except as follows:

Lien in favor of_____

whose address is_____

▶ "I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of 99,999 miles.
☐ 2. The odometer reading is not the actual mileage."

ODOMETER READING _____

Dealer's Plate No._____ Firm Name_____

Signature of Dealer or Agent_____ DATE OF SALE_____

---

### SECOND RE-ASSIGNMENT BY DEALER

The undersigned dealer hereby certifies that the vehicle
described in this title has been transferred to:_____

whose address is_____
with warranty to be free of all encumbrances except as follows:

Lien in favor of_____

whose address is_____

▶ "I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of 99,999 miles.
☐ 2. The odometer reading is not the actual mileage."

ODOMETER READING _____

Dealer's Plate No._____ Firm Name_____

Signature of Dealer or Agent_____ DATE OF SALE_____

---

### THIRD RE-ASSIGNMENT BY DEALER

The undersigned dealer hereby certifies that the vehicle
described in this title has been transferred to:_____

whose address is_____
with warranty to be free of all encumbrances except as follows:

Lien in favor of_____

whose address is_____

▶ "I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked:
☐ 1. The mileage stated is in excess of 99,999 miles.
☐ 2. The odometer reading is not the actual mileage."

ODOMETER READING _____

Dealer's Plate No._____ Firm Name_____

Signature of Dealer or Agent_____ DATE OF SALE_____

**NO ADDITIONAL RE-ASSIGNMENTS PERMITTED**