436

(Nos. 72263, 72264 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICKEY P. JOHNS, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. TONY WALL, Appellee.

*Opinion filed December 4, 1992.*

Roland W. Burris, Attorney General, of Springfield, and Gary V. Johnson, State's Attorney, of Geneva (Norbert J. Goetten, William L. Browers and Lawrence M. Bauer, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

No appearance for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

Defendants, Rickey P. Johns and Tony Wall, were charged by separate complaints with possession of certificates of title without complete assignment in violation of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 4—104(a)(2)). Prior to trial, defendants filed separate motions to declare section 4—104(b)(1), the penalty provision of section 4—104(a)(2), unconstitutional (Ill. Rev. Stat. 1989, ch. 95½, pars. 4—104(a)(2), (b)(1)). The trial court held that the penalty provision was violative of the due process and proportionate penalties clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §§2, 11), and dismissed the charges against defendants.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Wall possessed certificates of title to a 1985 Chevrolet and a 1985 Oldsmobile. The certificates were issued by the Secretary of State of Michigan to persons other than defendant. On both certificates, the signed names of the persons designated on the face of the certificates as owners appear in the space provided for the signature of the "Seller." The certificate for the Oldsmobile also bears the name and address of a "1st Secured Party." Neither defendant Wall's name, address nor signature appears in the space provided on the certificates for information concerning the purchaser. Defendant Wall was charged with two counts of unlawful possession of salvage certificates of title without complete assignment. Ill. Rev. Stat. 1989, ch. 95½, par. 4—104(a)(2).

Defendant Johns possessed a certificate of title to a 1978 Buick. The certificate was issued by the Secretary of State of Illinois to a person other than defendant. The signed name of the person designated on the face of the certificate as "OWNER(S)" appears in the space provided for the signature of the "Seller." Defendant's name does not appear in the space provided for "Signature(s) of Buyer(s)." Defendant Johns was charged with one count of possession of a certificate of title without complete assignment. Ill. Rev. Stat. 1989, ch. 95½, par. 4—104(a)(2).

Prior to trial, defendants filed separate motions to declare section 4—104(b)(1), the penalty provision for a violation of section 4—104(a)(2), unconstitutional. (Ill. Rev. Stat. 1989, ch. 95½, pars. 4—104(a)(2), (b)(1).) Following the hearing on defendants' motions, the trial court stated that sections 4—104(a)(1) and (a)(2) "could actually apply to people who have done nothing wrong. They haven't stolen the vehicle, they just didn't complete the paperwork." Further, the court considered the penalty for a violation of section 4—104(a)(2) in relation to penalties imposed for other offenses. The court stated that theft of a car valued at $300 was only a Class A misdemeanor, while a violation of section 4—104(a)(2) is a Class 4 felony. The court held the "statute" unconstitutionally violative of the due process and proportional penalties clauses of the Illinois Constitution (Ill. Const. 1970, art. I, §§2, 11) and dismissed the complaints.

The State timely filed a motion for reconsideration of the trial court's order. In its motion, the State asserted that the appellate court's decision in *People v. Tolliver* (1990), 205 Ill. App. 3d 711, *rev'd* (1992), 147 Ill. 2d 397, required reversal of the trial court's order. In reliance on the *Tolliver* opinion, the court reversed its order and held the penalty provision to be constitutional.

However, after re-reading the appellate court opinion in *Tolliver*, 205 Ill. App. 3d 711, which held section 4—104(a)(2) unconstitutionally overbroad, the trial court, on its own motion, "reconsidered [the State's] motion to reconsider." The court again declared the provision to be constitutionally infirm and dismissed the complaints. Neither party objected to the court's *sua sponte* reconsideration.

The State brought this direct appeal as a matter of right pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603). We granted the State's motion to consolidate the two cases. We now reverse.

## DISCUSSION

Section 4—104 provides, in pertinent part:

"Offenses relating to possession of titles and registration. (a) It is a violation of this Chapter for:
\*\*\*
2. A person to possess any manufacturers certificate of origin, salvage certificate, junking certificate, certificate of title, display certificate without complete assignment;
\* \* \*
(b) Sentence:
1. A person convicted of a violation of subsection 1 or 2 of paragraph (a) of this Section is guilty of a Class 4 felony." (Ill. Rev. Stat. 1989, ch. 95½, pars. 4—104(a)(2), (b)(1).)

The failure of a possessor of a certificate of title to fill in any portion of the document constitutes an incomplete assignment. (*People v. Tolliver* (1992), 147 Ill. 2d 397, 402.) Conviction of a Class 4 felony is punishable by a prison sentence of at least one year, but not more than three years (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(7)), and a fine not to exceed $10,000 (Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1(a)(1)).

This court has once before considered the constitutionality of section 4—104(b)(1). Recently, in *People v. Gean* (1991), 143 Ill. 2d 281, this court considered whether section 4—104(b)(1) was unconstitutional because it authorizes felony penalties for a violation of section 4—104(a)(2), which does not expressly state a required mental state. In deciding the issue, the court necessarily determined whether a violation of section 4—104(a)(2) is an absolute liability offense. Concluding that a violation of section 4—104(a)(2) does not create absolute liability, the court determined that "knowledge is the appropriate mental element." (*Gean*, 143 Ill. 2d at 288.) Accordingly, the court held that because section 4—104(b)(1) does not prescribe felony penalties for an absolute liability offense, it is not unconstitutional.

Subsequently, in *Tolliver*, 147 Ill. 2d 397, a majority of this court "modif[ied] the 'knowledge' required in *Gean* to include that the accused individual possessed the incomplete title with a criminal knowledge, or in other words, knowledge plus criminal purpose." *Tolliver*, 147 Ill. 2d at 403. But see *Tolliver*, 147 Ill. 2d at 403-06 (Freeman, J., concurring, joined by Miller, C.J.).

## ANALYSIS

At the outset, we note that no appellees' briefs have been filed in this case. However, we shall consider the merits of the appeal as it pertains to appellees under the guidelines set out in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

Initially the State asserts that it is difficult to determine which portion of the statute the trial court held unconstitutional. Review of the record reveals that defendants' motion sought only to have the penalty provision, section 4—104(b)(1), declared unconstitutional. The court's written order, however, states that "defendant's motion to declare ch. 95½, Sec. 4—104(a)(2) unconstitu-

tional is granted." During the proceeding on the State's motion for reconsideration, the trial court stated, "I simply held the penalty section unconstitutional."

A determination of the constitutionality of the penalty provision of the statute, section 4—104(b)(1), necessarily required the trial court to consider the substantive provision, section 4—104(a)(2), to which the penalty provision pertains. However, given the relief requested in defendants' motions and the trial court's oral statement concerning its finding thereon, we perceive that the court's written order intended to find only the penalty provision, section 4—104(b)(2), unconstitutional. In our review, we must likewise consider section 4—104(a)(2); however, we confine our holding to the constitutionality of section 4—104(b)(1), the penalty provision.

Before proceeding, we acknowledge those established principles which guide us in reviewing the constitutionality of statutes. Statutes are presumed constitutional and all reasonable doubts must be resolved in favor of upholding their validity. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 499.) Thus, the party challenging a statute has the burden of clearly establishing the alleged constitutional violation. *People v. Bales* (1985), 108 Ill. 2d 182, 188.

"[I]t is an elementary rule of construction that all sections of an act relating to the same subject matter should be considered together unless to do so would be plainly contrary to the legislative intent." (2A N. Singer, Sutherland on Statutory Construction §47.06, at 151 (5th ed. 1992).) Article I of the Code pertains to offenses relating to titles and registration and is part of the general statutory scheme entitled "ANTI-THEFT LAWS." (Ill. Rev. Stat. 1989, ch. 95½, par. 4—100 *et seq.*) Section 3—100 *et seq.* of the Code pertains, generally, to certificates of title. (Ill. Rev. Stat. 1989, ch. 95½, par. 3—100 *et seq.*) Consistent with the rule of construction, we review

section 4—104(b)(1) together with the general statutory provisions concerning certificates of title.

We begin our analysis with recitation of some of the statutory provisions regarding certificates of title. In Illinois, every owner of a vehicle which is in this State and for which no certificate of title has been issued must apply to the Secretary of State (Secretary) for a certificate of title. (See Ill. Rev. Stat. 1989, ch. 95½, par. 3—101(a).) Pursuant to our Code, the transferee of a vehicle "shall, promptly and within 5 business days after delivery to him of the vehicle and the assigned title, execute the application for a new certificate of title in the space provided therefor on the certificate or as the Secretary of State prescribes, and cause the certificate and application to be mailed or delivered to the Secretary of State." (Ill. Rev. Stat. 1989, ch. 95½, par. 3—112(b).) Upon satisfaction of compliance with the statutory requirements, the Secretary issues a certificate of title in the name of the transferee as owner. (See Ill. Rev. Stat. 1989, ch. 95½, par. 3—116(a).) The Secretary maintains a record of all certificates of title issued by him under a distinct title number assigned to the vehicle. Ill. Rev. Stat. 1989, ch. 95½, par. 3—106(b).

Having considered these provisions, it is apparent to us that the requirement of complete assignment of title contemplates compliance with those statutory provisions which mandate application for and attainment of certificates of title. (See generally Ill. Rev. Stat. 1989, ch. 95½, par. 3—100 *et seq.*) Otherwise completion of the assignment would be a mere perfunctory act.

Generally, statutes which relate to certificates of title to motor vehicles, such as ours, serve to protect owners of motor vehicles, lienholders, and innocent purchasers for value. The statutes provide for the tracing, accuracy and security of titles to motor vehicles, thereby protecting the public against fraud and imposition in transac-

tions involving titles of motor vehicles, and discourage larceny and the unlawful disposition of such vehicles. (See 60 C.J.S. *Motor Vehicles* §42(1) (1969).) Additionally, such statutes provide a mechanism for auditing and collecting State taxes. (See Ill. Rev. Stat. 1989, ch. 95½, pars. 3—104(f), 3—106(a).) It has been stated that the purpose of the anti-theft laws in section 4—100 of the Code (Ill. Rev. Stat. 1989, ch. 95½, par. 4—100 *et seq.*) " 'is to protect automobile owners against theft and *to protect the general public against the commission of crimes involving stolen automobiles.*' " (Emphasis added.) *People v. Morris* (1990), 136 Ill. 2d 157, 162, quoting *People v. One 1979 Pontiac Grand Prix Automobile* (1982), 89 Ill. 2d 506, 510.

In our view, the statutory provisions regarding certificates of title and registration, generally (Ill. Rev. Stat. 1989, ch. 95½, par. 3—100 *et seq.*), and the anti-theft provisions, specifically (Ill. Rev. Stat. 1989, ch. 95½, par. 4—100 *et seq.*), share a broad commonality of purpose. Together the provisions seek to prevent theft-related activity, to insure the accuracy and security of title, and to prevent fraudulent conduct involving vehicles. It is that broad purpose which we consider in reviewing the constitutionality of section 4—104(b)(1).

### A. Due Process

We first address defendants' contention that the penalty provision is a violation of due process. Under the State's police power, the legislature has broad discretion in establishing criminal penalties. (*Morris*, 136 Ill. 2d at 161.) That power, however, is subject to the limitation that a person's liberty may not be deprived without due process of law. (See Ill. Const. 1970, art. I, §2; *People v. Bradley* (1980), 79 Ill. 2d 410, 417.) "[T]he question of whether a legislative exercise of the police power meets the constitutional requirement of due process involves

identifying the public interest that the statute is intended to protect, examining whether the statute 'bears a reasonable relationship' to that interest, and determining whether the method used to protect or further that interest is 'reasonable.' " (*People v. Wick* (1985), 107 Ill. 2d 62, 66.) The test, thus, focuses on the purposes and objectives of the enactment in question. See *Morris*, 136 Ill. 2d at 161, quoting *City of Carbondale v. Brewster* (1979), 78 Ill. 2d 111, 115.

At the hearing on the motions, defendants argued that charges for a violation of section 4—104(a)(2) are "selective." Defendants asserted that used car dealers hold incomplete titles when they become possessed of a vehicle. Yet, defendants argued, dealers are not subject to penalty for violation of section 4—104(a)(2).

Defendants' argument is flawed. Car dealers are engaged in the business of the purchase and sale of motor vehicles. The statutory requirements concerning the transfer of vehicles and the issuance of certificates of title for car dealers (see Ill. Rev. Stat. 1989, ch. 95½, par. 3—113) necessarily differ from the requirements for non-dealers (see Ill. Rev. Stat. 1989, ch. 95½, pars. 3—112(b), (e)). Generally, if a dealer buys a vehicle, procures a certificate of title from the owner and holds it for resale, the dealer need not send the certificate to the Secretary. However, upon transferring the vehicle to another person, the dealer must then execute an assignment and mail the certificate to the Secretary with the transferee's application for a new certificate. See Ill. Rev. Stat. 1989, ch. 95½, par. 3—113.

Defendants argued, additionally, that because they owned the vehicles at issue, their conduct did not contribute to theft-related activities. For purposes of this discussion, we equate defendants' assertions of "ownership" with a valid right to possess title.

We noted in *Tolliver* several scenarios where a title might not be completed and yet no criminal offense was intended, hence, the "criminal knowledge" requirement. (See *Tolliver*, 147 Ill. 2d at 402-03.) Thus, any argument that section 4—104(a)(2) punishes nonculpable conduct is effectively foreclosed by *Tolliver*.

Clearly where a possessor of a certificate of title to a motor vehicle has no valid right to the vehicle, it is easy to conceive of how knowing possession without complete assignment contributes to theft-related, "chop-shop" or organized criminal activity. However, because we perceive that section 4—104(a)(2) purports not only to prevent theft related activity, but also to prevent fraudulent conduct involving vehicles, we reject defendant's argument as a basis upon which to hold the provision unconstitutional. Although a true owner's possession without complete assignment may not contribute to theft-related activity, it may, nonetheless, contribute to other prohibited conduct. For example, where the true owner's conduct has as its purpose to evade tracing chain of title in a vehicle for some illegal purpose, or to engage in fraudulent or otherwise illegal disposition of a vehicle, such conduct constitutes the evil which the statutory scheme relating to certificates of title in general and section 4—104(a)(2), specifically, seeks to prevent.

It is not our function, however, to conceptualize the various scenarios in which a defendant's failure to complete assignment might contribute to theft-related or any other illegal activity. We presume that the legislature was guided by an awareness of the evils to be prevented in enacting the challenged provision.

After careful consideration, we believe that the requirement of complete assignment, which contemplates the application and attainment of a certificate of title, bears a rational relationship to protecting the public against fraud, theft and traffic in stolen motor vehicles.

Thus, we find that section 4—104(b)(1) does not violate due process.

As an aside, and though we express no opinion as to defendants' rights in the titles at issue here, we note that other than defendants' assertions, the record is devoid of any evidence of "ownership." Defendants' assertion of "ownership," without more, presumes that the conveyers of title to the certificated vehicles had good title to convey. Absent complete assignment, application and issuance of new certificates of title on the subject vehicles, however, "ownership" is subject to question. Significantly, "[e]xcept as provided in [the section of the Code concerning car dealers] and as between the parties, a transfer by an owner is not effective until the provisions [regarding applications for the issuance of a new certificate of title] have been complied with ***." Ill. Rev. Stat. 1989, ch. 95½, par. 3—112(e).

### B. Proportionate Penalties

Defendants' second challenge to the constitutionality of section 4—104(b)(1) is that it violates the proportionate penalties clause of the Illinois Constitution. (Ill. Const. 1970, art. I, §11.) The proportionate penalties clause of our constitution requires that the legislature, in defining crimes and their penalties, consider the constitutional goals of restoring an offender to useful citizenship and of *providing a penalty according to the seriousness of the offense.* (See Ill. Const. 1970, art. I, §11.) A sentencing scheme violates the proportionate penalties clause where conduct creating a less serious threat to the public health and safety than other conduct is punished more harshly. See *People v. Wagner* (1982), 89 Ill. 2d 308, 313; see also *People v. Wisslead* (1983), 94 Ill. 2d 190, 196.

In the trial court, defendants supported their proportionate penalties argument with comparison of the pen-

alty for a violation of section 4—104(a)(2) to prescribed penalties for offenses, perceived by defendants, of a less serious nature. In that regard, defendants asserted that the vehicles involved in this case were valued at $300. Yet, defendants argued, theft of a vehicle valued at $300 would be merely a Class A misdemeanor. (See Ill. Rev. Stat. 1989, ch. 38, par. 16—1(b)(1).) Similarly, defendants asserted that a violation of section 4—104(a)(4), which prohibits, *inter alia*, a person from displaying on a vehicle a certificate of title not authorized for use on such vehicle, is as serious an offense as a violation of section 4—104(a)(2). Yet, a violation of section 4—104(a)(4) results in a lesser penalty than does violation of section 4—104(a)(2). Further, defendants argued that a violation of section 4—105.1, which makes it illegal for a person to knowingly, with the intent to defraud, surrender a certificate of title, or other title document, in exchange for a certificate of title which results in, *inter alia*, the deletion of the words "S.V." or "REBUILT" or the alteration or deletion of any other information required to be contained on such a certificate of title or other title document is only a Class A misdemeanor. Ill. Rev. Stat. 1989, ch. 95½, pars. 4—105.1(a)(1), (c).

Unlike defendants, we do not necessarily equate the seriousness of a crime with the value of the property involved. Moreover, we believe that the conduct involved in the theft of a $300 vehicle is quite distinct from the conduct prohibited by section 4—104(a)(2). The legislature could reasonably have determined that an isolated incident of theft of a $300 automobile is less serious than the systematic and continuous conduct involved in chop-shop activity, or evading the tracking and security of titles. We believe this reasoning has equal validity in the case of a first violation of section 4—104(a)(4) or section 4—105.1. Notably, a second or subsequent violation of section 4—104(a)(4), or a second violation of section 4—

105.1 within a five-year period is a Class 4 felony. Ill. Rev. Stat. 1989, ch. 95½, pars. 4—104(b)(3), 4—105.1(c).

Without question, "[t]he legislature may perceive a need to enact a more stringent penalty provision in order to halt an increase in the commission of a particular crime." (*People v. Steppan* (1985), 105 Ill. 2d 310, 320.) Because we are unable to conclude that the penalty prescribed by section 4—104(b)(1) for knowing possession of certificate of title without complete assignment "is so disproportionate to the offense that it shocks the moral sense of the community or is cruel or degrading," we do not find it violative of the proportionate penalties clause. *People v. Bryant* (1988), 165 Ill. App. 3d 996, 1000; see also *People v. Gonzales* (1962), 25 Ill. 2d 235, 240.

## CONCLUSION

For the reasons stated above, we do not find that section 4—104(b)(1) (Ill. Rev. Stat. 1989, ch. 95½, par. 4—104(b)(1)) violates either the due process or proportionate penalties clause of the Illinois Constitution. Defendants have failed to meet their burden. Thus, the decision of the circuit court of Kane County is reversed and this cause is remanded for further proceedings.

*Reversed and remanded.*