(Nos. 86364, 86365 cons.—

*In re* K.C., a Minor (The People of the State of Illinois, Appellant, v. K.C., Appellee).—*In re* S.D., a Minor (The People of the State of Illinois, Appellant, v. S.D., Appellee).

*Opinion filed July 1, 1999.*

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, Linda D. Woloshin, Mary L. Boland and Alan J. Spellberg, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Renee C. Norris, Assistant Public Defender, of counsel), for appellees.

JUSTICE RATHJE delivered the opinion of the court:

In separate petitions for adjudication of wardship, the State charged respondents, K.C. and S.D., with criminal trespass to a vehicle (720 ILCS 5/21—2 (West 1996)). The State later amended the petitions to include charges under sections 4—102(a)(1) and 4—102(a)(2) of the Illinois Vehicle Code (625 ILCS 5/4—102(a)(1), (a)(2) (West 1996)). Respondents moved to strike the amendments, arguing that sections 4—102(a)(1) and 4—102(a)(2) potentially punish wholly innocent conduct without requiring a culpable mental state and therefore violate the due process clauses of the Illinois and United States Constitutions (Ill. Const. 1970, art. I, § 2; U.S. Const., amend. XIV). The circuit court of Cook County agreed with respondents and dismissed the amended counts. The State appealed directly to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d. R. 603).

## SECTION 4—102 OF THE ILLINOIS VEHICLE CODE

Section 4—102 reads, in relevant part:

"Offenses relating to motor vehicles and other vehicles—Misdemeanors.

(a) It is a violation of this Chapter for:

(1) A person, without authority to do so, to damage a vehicle or to damage or remove any part of a vehicle;

(2) A person, without authority to do so, to tamper with a vehicle or go in it, on it, or work or attempt to work any of its parts, or set or attempt to set it in motion;

\*\*\*

(b) Sentence. A person convicted of a violation of this Section shall be guilty of a Class A misdemeanor. A person convicted of a violation of this Section a second or subsequent time, shall be guilty of a Class 4 felony." 625 ILCS 5/4—102 (West 1996).

A person convicted of a Class A misdemeanor faces a maximum fine of $2,500 (730 ILCS 5/5—9—1(a)(2) (West Supp. 1999)) and a maximum prison term of 364 days (730 ILCS 5/5—8—3(a)(1) (West 1996)). A person convicted of a Class 4 felony faces a maximum fine of $25,000 (730 ILCS 5/5—9—1(a)(1) (West Supp. 1999)) and a maximum prison term of three years (730 ILCS 5/5—8—1(a)(7) (West 1996)).

### ABSOLUTE LIABILITY

The threshold question in this case is whether the trial court correctly concluded that sections 4—102(a)(1) and 4—102(a)(2) impose absolute liability. In deciding whether the legislature intended to establish an absolute liability offense, this court considers the guidelines that the legislature set forth in section 4—9 of the Criminal Code of 1961 (720 ILCS 5/4—9 (West 1996)), which states:

"A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the of-

fense clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4—9 (West 1996).

This section applies to all criminal penalty provisions, including those outside the Criminal Code of 1961. *People v. Gean*, 143 Ill. 2d 281, 285 (1991).

As we noted in *Gean*, the committee comments to section 4—9 reveal that the legislature intended to limit the scope of absolute liability. *Gean*, 143 Ill. 2d at 285-86. Those comments read, in relevant part:

"This section is intended to establish, as an expression of general legislative intent, rather strict limitations upon the interpretation that mental state is not an element of an offense, although the express language of the provision defining the offense fails to describe such an element. ***

* * *

In addition to permitting a construction requiring absolute liability in offenses punishable by incarceration or by a fine of not more than $500, the second part of section 4—9 expresses the policy that in other offenses not including a mental state in the definition only a clearly indicated legislative intent to create absolute liability should be recognized, and in all other instances, a mental-state requirement should be implied as an application of the general rule that an offense consists of an act accompanied by a culpable mental state ***." 720 ILCS Ann. 5/4—9, Committee Comments—1961, at 169-72 (Smith-Hurd 1993).

Consistent with the committee comments, "[a]bsent either a clear indication that the legislature intended to impose absolute liability or an important public policy favoring it, this court has been unwilling to interpret a statute as creating an absolute liability offense." *People v. Sevilla*, 132 Ill. 2d 113, 120 (1989). Instead, if at all possible, the court will infer the existence of a culpable mental state, even where the statute itself appears to impose absolute liability. See, *e.g.*, *People v. Tolliver*, 147

Ill. 2d 397, 403 (1992); *Gean*, 143 Ill. 2d at 288; *Sevilla*, 132 Ill. 2d at 123; *People v. Nunn*, 77 Ill. 2d 243, 252 (1979).

With these principles in mind, we now turn to sections 4—102(a)(1) and 4—102(a)(2). The parties agree that, as written, sections 4—102(a)(1) and 4—102(a)(2) do not require a culpable mental state. The parties also agree that, as written, sections 4—102(a)(1) and 4—102(a)(2) carry a fine greater than $500 and the possibility of imprisonment. The critical question therefore becomes whether sections 4—102(a)(1) and 4—102(a)(2) "clearly indicate[ ] a legislative purpose to impose absolute liability" (720 ILCS 5/4—9 (West 1996)). We hold that they do.

The legislature's clear intent to impose absolute liability for violations of sections 4—102(a)(1) and 4—102(a)(2) can be gleaned from two sources. First, sections 4—102(a)(1) and 4—102(a)(2) have not always lacked a culpable mental state. On the contrary, until 1967, section 4—102 of the Illinois Vehicle Code provided that:

> "It shall be a violation of the provisions of this chapter for:
>
> * * *
>
> (c) a person to, *with intent* and without right to do so, damage a motor vehicle or damage or remove any of its parts or components;
>
> (d) a person to, without right to do so *and with intent to commit a crime*, tamper with a motor vehicle, or go in or on it, or work or attempt to work any of its parts or components, or set or attempt to set it in motion." (Emphasis added.) Ill. Rev. Stat. 1965, ch. 95½, pars. 4—102 (c), (d).

Thus, prior to 1967, what is now section 4—102(a)(1) required proof of intent, and what is now section

4—102(a)(2) required proof of both intent and a criminal purpose. In 1967, however, the legislature specifically deleted these mental states, leaving the rest of the provisions substantially intact. See Ill. Rev. Stat. 1967, ch. 95½, pars. 4—102 (a), (b). Where the legislature makes a material change to an unambiguous statute, the presumption is that " 'the amendment was intended to change the law.' " *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 213 (1994), quoting *State of Illinois v. Mikusch*, 138 Ill. 2d 242, 252 (1990). Given section 4—102's unquestionable clarity prior to the 1967 amendment, the only possible conclusion that we can draw is that the 1967 amendment was designed to remove the intent and criminal purpose elements from that statute—*i.e.*, to impose absolute liability.

The State contends, however, that we should not presume that the legislature intended to impose absolute liability simply because it specifically deleted the culpable mental state from sections 4—102(a)(1) and 4—102(a)(2). In support, the State notes that, in *Nunn*, this court stated that "the omission or addition of words in a new statute [does not] necessarily indicate a legislative intent to change the effect of the earlier statute." *Nunn*, 77 Ill. 2d at 249. Although helpful to the State on its surface, the quoted passage, when properly considered in context, confirms that the amendments to sections 4—102(a)(1) and 4—102(a)(2) were intended to change the effect of the earlier statute.

In *Nunn*, the question was whether the legislature intended to make leaving the scene of an accident involving death or personal injury an absolute liability offense. In arguing that the legislature so intended, the State pointed to the fact that, although the relevant statute originally required that the person charged know that a death or injury had occurred, the statute under which

the defendant was charged was amended in 1935 and no longer required such knowledge. *Nunn*, 77 Ill. 2d at 247-48. In rejecting the State's argument, this court drew a distinction between the adoption of an entirely new act and the amendment of an existing statute. Where the legislature amends an existing statute, the presumption is that the legislature intended a material change in the law. Where the legislature repeals an existing act and replaces it with an entirely new act, however, that presumption is rebutted. *Nunn*, 77 Ill. 2d at 248. In *Nunn*, the change in the relevant law came about because the legislature repealed the original statute *in toto* and replaced it and others with the Uniform Act Regulating Traffic on Highways (now the Illinois Vehicle Code). *Nunn*, 77 Ill. 2d at 247. Thus, this court concluded, "the presumption is not invocable because the action of the legislature in 1935 was to adopt a new act *** *and not to amend the previous statute.*" (Emphasis added.) *Nunn*, 77 Ill. 2d at 248.

In this case, by contrast, the legislature simply deleted the mental state from sections 4—102(a)(1) and 4—102(a)(2), leaving the balance of the statute intact. Thus, under *Nunn*, this is *precisely* the type of case in which we will presume that the legislature intended to effect a material change in the law.

Our conclusion is bolstered by the fact that section 21—2 of the Criminal Code of 1961 (720 ILCS 5/21—2 (West 1996)) defines criminal trespass to a vehicle in terms substantially similar to section 4—102(a)(2) of the Illinois Vehicle Code, with one notable exception:

> "Criminal trespass to vehicles. Whoever *knowingly* and without authority enters any part of or operates any vehicle, aircraft, watercraft or snowmobile commits a Class A misdemeanor." (Emphasis added.) 720 ILCS 5/21—2 (West 1996).

It is well established that, by employing certain language in one instance and wholly different language in another,

the legislature indicates that different results were intended. *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 113 (1993); *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 100 (1964). The fact that the legislature specifically *included* a mental state in section 21—2 and specifically *deleted* the mental state from section 4—102(a)(2) is further support for the conclusion that the legislature was drawing a meaningful distinction between the two statutes. See *People v. Ruberg*, 76 Ill. App. 3d 671, 674 (1979). Moreover, were we to hold that section 4—102 implicitly requires proof of a culpable mental state, the "knowingly" language of section 21—2 would be rendered "meaningless surplusage." Accordingly, we will not adopt such a reading. See *People v. Wick*, 107 Ill. 2d 62, 67 (1985).

In sum, both the plain language and the legislative history demonstrate a clear legislative intent to impose absolute liability for violations of sections 4—102(a)(1) and 4—102(a)(2) of the Illinois Vehicle Code.

## CONSTITUTIONALITY

The next question is whether sections 4—102(a)(1) and 4—102(a)(2) violate the due process clauses of the Illinois and United States Constitutions by potentially punishing wholly innocent conduct without requiring a culpable mental state.

We begin by emphasizing that a statute is presumed constitutional and that the party challenging the statute bears the burden of demonstrating its invalidity. *People v. Miller*, 171 Ill. 2d 330, 333 (1996). Although the legislature has wide discretion in prescribing penalties for defined criminal offenses, this discretion is limited by the constitutional guarantee that a person may not be deprived of liberty without due process of law. *People v. Reed*, 148 Ill. 2d 1, 11 (1992).

In determining the validity of an enactment under

the due process clause, this court considers " 'whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.' " *People v. Bradley*, 79 Ill. 2d 410, 417 (1980), quoting *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 159 (1955); *Reed*, 148 Ill. 2d at 11. This standard is essentially the same as the "rational basis" test, which we apply when determining whether a statute that neither involves a suspect class nor impinges upon a fundamental right violates equal protection. *People v. Kimbrough*, 163 Ill. 2d 231, 242 (1994). Thus, as with challenges under the equal protection clause, we will uphold legislation attacked on due process grounds if that legislation bears a rational relationship to a legitimate state goal. *Kimbrough*, 163 Ill. 2d at 242.

Applying these principles, this court has held that a statute violates the due process clauses of both the Illinois and the United States Constitutions if it potentially subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state. See *People v. Zaremba*, 158 Ill. 2d 36, 40-43 (1994); *People v. Wick*, 107 Ill. 2d 62, 66-67 (1985). In *Zaremba*, the statute at issue was section 16—1(a)(5) of the Illinois theft statute (Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(5)). Section 16— 1(a)(5) stated that a person commits a theft when he knowingly:

"Obtains or exerts control over property in the custody of any law enforcement agency which is explicitly represented to him by any law enforcement officer or any individual acting in behalf of a law enforcement agency as being stolen." Ill. Rev. Stat. 1989, ch. 38, par. 16—1(a)(5).

Recognizing that section 16—1(a)(5) was designed to facilitate undercover fencing stings, the court nevertheless held that section 16—1(a)(5) swept too broadly, potentially punishing innocent conduct without requiring a culpable mental state. For example, a state evidence

technician taking possession of theft proceeds from an arresting officer would be subject to punishment under section 16—1(a)(5), even though his conduct undoubtedly was authorized. Accordingly, this court held that section 16—1(a)(5) did not pass constitutional muster. *Zaremba*, 158 Ill. 2d at 42-43.

Similarly, in *Wick*, this court concluded that a section of the aggravated arson statute was unconstitutional. The statute at issue provided that the offense of aggravated arson was committed when a person knowingly damaged a building by fire and a firefighter or police officer was injured as a result of the fire. See Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1(a)(3). The court noted that the purpose of the statute was to subject arsonists to a more severe penalty when their conduct resulted in injury to a firefighter or police officer. The statute was not reasonably related to that objective, however, because the aggravated arson statute did not require an unlawful purpose in setting a fire, as the definition of simple arson did. The court stated:

> "Under this statute, for example, a farmer who demolishes his deteriorated barn to clear space for a new one is liable for a Class X penalty if a fireman standing by is injured at the scene. If the statute's purpose is to provide a severe penalty for arsonists whose conduct results in personal injury to firemen or policemen, the statute does not bear a reasonable relationship to its purpose because the penalty is not limited to arsonists. Moreover, a statute that subjects a person having no culpable intent to a Class X penalty is not a reasonable means of ensuring that arsonists are so punished." *Wick*, 107 Ill. 2d at 66.

With these principles and precedent in mind, we now turn to sections 4—102(a)(1) and 4—102(a)(2), which undoubtedly are capable of punishing wholly innocent conduct. Indeed, in its opening brief, the State concedes that a Good Samaritan who enters an unlocked car to turn off the headlights violates section 4—102(a)(2) and potentially faces up to one year in prison. Similarly, at

oral argument, the State conceded that sections 4—102(a)(1) and 4—102(a)(2) make criminals out of people who decorate the bride and groom's car during a wedding ceremony, get in a traffic accident, or inadvertently hit a baseball through a neighbor's windshield. Significantly, a person who engages in any of these activities more than once is guilty of a Class 4 felony, facing up to *three years* in prison.

Given these concessions from the State, which is charged with enforcing sections 4—102(a)(1) and 4—102(a)(2), we have little difficulty concluding that sections 4—102(a)(1) and 4—102(a)(2) violate the due process clauses of the Illinois and United States Constitutions. Although the prevention of vandalism and malicious mischief are undoubtedly laudable goals, "protecting otherwise innocent conduct from criminal prosecution" is an equally laudable goal. See *Tolliver*, 147 Ill. 2d at 403. Sections 4—102(a)(1) and 4—102(a)(2) sweep too broadly, potentially imprisoning Good Samaritans, errant batters, and even wedding parties, all of whom possess wholly innocent motives. We encourage the legislature to cure the constitutional defect at the earliest possible time.

In reaching this result, we wish to emphasize that the due process clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) forms a separate, adequate, and independent ground for our decision.

## CONCLUSION

The circuit court correctly concluded that sections 4—102(a)(1) and 4—102(a)(2) of the Illinois Vehicle Code potentially punish wholly innocent conduct without requiring proof of a culpable mental state. We therefore affirm the circuit court's judgment declaring sections 4—102(a)(1) and 4—102(a)(2) unconstitutional under the due process clauses of both the Illinois and United States Constitutions.

*Affirmed.*