THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LANCE AVERY, Defendant-Appellant.

First District (1st Division)   No. 1—94—0190

Opinion filed November 13, 1995.—Rehearing denied February 27, 1996.

Stephen M. Komie and Deanne C. Paul, both of Komie & Associates, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Michael Cho, and Adam Monreal, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

Lance Avery was charged with 12 counts of driving under the influence of alcohol. Each count was a felony charge. The trial court barred his proposed insanity defense, ruling that the statute created an absolute liability offense that did not require any mental state. Avery was convicted in a bench trial and sentenced to 16 months in prison.

This case required us to answer two questions. First, is the felony charge of driving under the influence of alcohol an absolute liability offense? Second, if it is, does that violate the defendant's constitutional right to due process of law?

We affirm the defendant's conviction and sentence.

BACKGROUND

On June 16, 1991, at about 11:20 p.m., Illinois State Trooper Robert Love arrived at the scene of a two-vehicle accident in the northbound lanes of Interstate 294, at mile post 10. When he arrived he saw a maroon-colored Chevy Malibu in the grassy ditch on the right-hand side of the road and a gray Chevy Suburban van, upside-

down, on the right-hand shoulder. Two females were lying on the grass near the Malibu, both were bleeding and appeared injured. A man was walking around in the area of the Malibu.

Trooper Love first went to the Malibu to check the seriousness of the victims' injuries. One of the women, Mara Miskien, identified herself as the driver of the Malibu. She told Trooper Love that the Malibu had broken down so she pulled off to the right shoulder of the highway. While she, her husband, and another woman sat in the disabled car, it was struck from behind.

When Trooper Love approached the overturned van, he found a man lying half inside and half outside the vehicle. He spoke with this individual, later identified as defendant Lance Avery (Avery), and noticed that Avery's breath smelled strongly of alcohol, his eyes were glassy, and his speech slurred. Avery sometimes mumbled incoherently in response to questions, but confirmed that he had been the driver of the van. He couldn't say how the accident happened.

Ambulances arrived on the scene. While the medical personnel attended to the accident victims, Trooper Love investigated. He noted that the night was clear, the road was dry, and the section of the highway where the accident occurred was straight and level. The Malibu sustained damages to the rear end, but not to the front. The van sustained damages to the right front, not the rear. This damage pattern was consistent with a rear-end collision as reported by Miskien. Trooper Love also noted that the Malibu's emergency flashers were operating and there was no evidence of skid marks on the highway prior to the point of impact, which was determined by a fresh gouge mark in the shoulder.

Based on this information, Trooper Love informed Avery at the scene that he was under arrest for driving under the influence of alcohol. Avery was then taken to Christ Hospital, where two vials of blood were drawn in accordance with Illinois standards and procedures and under Trooper Love's supervision. The sealed vials were taken to the Illinois State crime lab by Trooper Love. Analysis of the blood indicated that the alcohol content was .288 grams per deciliter.

Defendant was later charged by information with 12 counts of driving under the influence of alcohol in violation of sections 11—501(a)(1) and (d)(3) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95$^{1}$/2, pars. 11—501(a)(1), (d)(3) (now 625 ILCS 5/11—501(a)(1), (d)(3) (West 1992))). Each count was a felony charge.

On November 22, 1991, Avery filed a motion to quash arrest and suppress evidence, alleging that there was no probable cause for his arrest. A hearing was held on June 2, 1992. The motion was denied.

In October 1992, defense counsel notified the State that he intended to raise the affirmative defense of insanity to the charges against Avery. In response, the State filed a motion *in limine* to bar the defense. The State argued that the charge of aggravated driving under the influence of alcohol, although a Class 4 felony, is an absolute liability offense. The trial court agreed and granted the motion to bar the defense.

On November 30, 1993, defendant agreed to a bench trial at which all of the evidence was presented by way of stipulation. Defendant moved for a directed verdict at the close of the State's evidence. The trial court denied the motion.

Defendant then made an offer of proof with regard to his defense of insanity. Defense counsel offered to show that he would have presented the testimony of one surgeon, one psychiatrist, and three psychologists, including Avery's treating psychologist. All of these experts would testify that Avery suffered from a mental disorder known as posttraumatic stress disorder as a result of his involvement in the Persian Gulf War as an army reservist. The surgeon, a psychologist, and the treating psychologist would further postulate that in June 1991 Avery was unable "to conform his behavior to his understanding of the law." As a result, it was their opinion that Avery had been legally insane at the time of the accident. One of the experts went on to explain that Avery felt "compelled" to drink alcohol to excess in order "to cope with the overwhelming symptoms of his mental disorder."

The other two experts would testify that it was their opinion that Avery was legally sane at the time of the accident, though he suffered from posttraumatic stress disorder.

Defense counsel also offered to show that Avery would testify that, due to a prior supervision for driving under the influence, he had enjoyed a period of sobriety from 1988 until his return from the Persian Gulf War in 1991. After the war he felt depressed, anxious, and unable to control himself. He "fell off the wagon" and began drinking uncontrollably again. On the same weekend that the accident took place, Avery had been charged with driving under the influence in another county of this State.

After the defense presented the offers of proof, the trial court found Avery guilty of three counts of aggravated driving under the influence of alcohol. Avery was sentenced on count I to serve 16 months in the Department of Corrections; the other convictions were merged with count I, and credit was given for one day served. Avery now brings this appeal.

DECISION

## THE STATUTE CREATED AN ABSOLUTE LIABILITY OFFENSE

Avery was found guilty under the provision of the Illinois Vehicle Code which makes it unlawful to "drive or be in actual physical control of any vehicle within this State while: (1.) the alcohol concentration in such person's blood or breath is 0.10 or more based upon the definition of blood and breath units in Section 11—501.2." 625 ILCS 5/11—501(a)(1) (West 1992).

The offense was transformed from a misdemeanor to the felony of aggravated driving under the influence of alcohol when Avery, in committing the violation, "was involved in a motor vehicle accident which resulted in great bodily harm or permanent disability or disfigurement to another, when such violation was the proximate cause of such injuries." 625 ILCS 5/11—501(a)(1), (d)(3) (West 1992).

The statute does not provide for any mental state. Avery contends a culpable mental state must be read into the statute. Otherwise, he says, his right to due process of law would be violated.

The legislature has addressed the issue of absolute liability for criminal offenses in section 49 of the Criminal Code of 1961 (720 ILCS 5/4—9 (West 1992)):

"Absolute Liability. A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, *or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described.*" (Emphasis added.)

The committee comments that follow section 4—9 reflect a legislative intent to establish "rather strict limitations upon the interpretation that mental state is not an element of an offense, although the express language of the provision defining the offense fails to describe such an element." 720 ILCS Ann. 5/4—9, Committee Comments, at 169-70 (West 1993).

So it is the courts that have engrafted a mental state on criminal statutes that lack any requirement of intent, knowledge, recklessness, or negligence. See 720 ILCS 5/4—3(b) (West 1992).

In *People v. Tolliver* (1992), 147 Ill. 2d 397, 403, 589 N.E.2d 527, the supreme court saved the statute that criminalized possession of title without complete assignment by adding a requirement of "criminal knowledge."

A year earlier, in *People v. Gean* (1991), 143 Ill. 2d 281, 573 N.E.2d

818, the court read a knowledge requirement into the statute that made it unlawful to possess salvage certificates without authority and certificates of title without complete assignment.

The statute making it an offense to fail to file a retailer's occupation tax return did not contain a mental state when it reached the supreme court in *People v. Sevilla* (1989), 132 Ill. 2d 113, 547 N.E.2d 117. The court held that the legislature intended knowledge to be a requisite mental state element.

And in *People v. Nunn* (1979), 77 Ill. 2d 243, 396 N.E.2d 27, the court inserted a knowledge requirement into the statute making it an offense to leave the scene of a personal injury accident.

In each of these cases the court examined the statute for a clear legislative purpose for imposing absolute liability or for some important public policy that favored absolute liability. Neither was found. The cases agree that "[t]he possible punishment which can be imposed for a violation of a statute is an important factor in determining whether it is an absolute liability offense." (*Gean*, 143 Ill. 2d at 287; *Sevilla*, 132 Ill. 2d at 122; *Nunn*, 77 Ill. 2d at 249.) That is, where the punishment is great, it is less likely that the legislature intended to create an absolute liability offense. *People v. Valley Steel Products Co.* (1978), 71 Ill. 2d 408, 425, 375 N.E.2d 1297.

If we consider the statute at issue as a misdemeanor, without the felony penalty enhancement of subsection (d), no mental state is required to complete the offense. "The obvious legislative intent in enacting section 11—501(a)(1) was to impose strict liability on drivers found to be impaired by an alcohol concentrate of 0.10% or above." *People v. Ziltz* (1983), 98 Ill. 2d 38, 42, 455 N.E.2d 70.

The reason is clear: "The State has a rational basis for curbing the incidence of drunk driving." *Ziltz*, 98 Ill. 2d at 43.

Several appellate court decisions have held that section 11—501(a) creates an absolute liability offense, obviating the need to prove any mental state. See *People v. Gassman* (1993), 251 Ill. App. 3d 681, 622 N.E.2d 845; *People v. Washburn* (1990), 197 Ill. App. 3d 655, 554 N.E.2d 973; *People v. Kappas* (1983), 120 Ill. App. 3d 123, 458 N.E.2d 140; *People v. Teschner* (1979), 76 Ill. App. 3d 124, 394 N.E.2d 893.

The language of the statute, in paragraph (b), indicates a legislative intent to create an absolute liability offense:

> "The fact that any person charged with violating this Section is or has been legally entitled to use alcohol, or other drugs, or any combination of both, shall not constitute a defense against any charge of violating this Section." 625 ILCS 5/11—501(b) (West 1992).

The more difficult question is whether the legislature intended to require a mental state when it added circumstances that change the misdemeanor to a Class 4 felony. The essential crime remains the same—driving or controlling a vehicle while the alcohol concentration in his blood was 0.10 or more. It is the physical harm to others caused by the drinking that creates the felony in this case.

In *Gassman*, the defendant contended section 11—501(a)(5) could not be an absolute liability offense because it might, under certain circumstances, be a Class 4 felony. The court, considering "the reason for the law, the evils it was intended to remedy, and the objects it was designed to attain" (*Gassman*, 251 Ill. App. 3d at 689), held all of the subsections in section 11—501(a) were intended to create absolute liability offenses. Because the defendant in *Gassman* was not actually convicted of a felony, that case does not directly address the question we have posed.

The purpose of the statute is to protect the people who walk and drive on the public way. The legislature has determined that drunk drivers are ticking time bombs. This statute attempts to regulate the way people drive. This is not the incomplete title of *Tolliver* or the unauthorized salvage certificate of *Gean*. Titles and salvage certificates do not kill and maim people. Drunk drivers do.

■ We do not see how the addition of the subsection (d) aggravating factors can be held to signal any legislative intent to add a mental state to the statute. Without the aggravating factors, the offense is a Class A misdemeanor, carrying up to 364 days in jail. The purpose of the statute remains the same. The evils it intends to remedy remain the same. Absolute liability was the legislative choice to accomplish the legitimate goal of keeping the streets and highways safe.

We also note the rule of statutory construction that holds a legislature is presumed to be aware of judicial interpretations of its acts. When the legislature added the aggravating factor that elevated the defendant's offense to a felony it failed to add a culpable mental state. That raises the presumption that the legislature intended to adopt the judicial construction. See *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319; *People v. Foster* (1983), 99 Ill. 2d 48, 457 N.E.2d 405.

We are persuaded that the felony charged in this case is an absolute liability offense. No mental state is required. The trial judge was correct when he refused to entertain the insanity defense.

## THE STATUTE, AS CONSTRUED, DOES NOT VIOLATE DUE PROCESS

The supreme court has been sensitive to the danger that absolute

liability statutes could impose felony sanctions on innocent conduct. A statute that does that violates the due process clauses of the United States and Illinois Constitutions. *People v. Zaremba* (1994), 158 Ill. 2d 36, 630 N.E.2d 797; *People v. Tolliver* (1992), 147 Ill. 2d 397, 589 N.E.2d 527.

For that reason, the court declared an absolute liability theft provision unconstitutional in *Zaremba* and read in a mental state requirement in *Tolliver*.

■ There is no such danger in this case. Driving while intoxicated is not innocent conduct. The test for determining whether a statute constitutes a proper exercise of police power is whether it bears a rational relationship to the interests sought to be protected and whether the means adopted constitute a reasonable method to accomplish the objective. *People v. Fate* (1994), 159 Ill. 2d 267, 271, 636 N.E.2d 549.

In *Fate*, the defendant was charged with driving a motor vehicle while there was some amount of a drug in his urine or blood. The defendant contended the statute violated due process because it created an impermissible *per se* violation. That is, no showing of impairment was required. The court upheld the statute, saying: "[W]e believe that the statute constitutes a reasonable exercise of the police power of the State in the interest of safe streets and highways." 159 Ill. 2d at 271.

We find the statute in this case is a reasonable exercise of police power and does not violate due process.

OTHER ISSUES

■ The defendant challenges the legality of his arrest at the scene of the accident. We have examined all that Trooper Love saw and heard at the accident scene before he made the arrest. Any reasonable police officer in Trooper Love's position would reasonably believe the defendant had committed the crime of driving under the influence of alcohol. Probable cause was palpable. See *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.

The defendant also challenges the sufficiency of the evidence. He contends the State failed to meet its burden of proof.

The State had to prove: (1) the defendant was operating or in actual control of a vehicle; (2) while operating the vehicle his blood-alcohol level was greater than 0.10; and (3) his driving with that amount of alcohol in his blood was the proximate cause of the accident that resulted in serious bodily harm to another.

■ There is no need to rehash the evidence. It was sufficient to support the trial court's finding.

## CONCLUSION

For the reasons stated, we affirm the defendant's conviction and sentence.

Affirmed.

CAMPBELL, P.J., and BRADEN, J., concur.