THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEWIS O'BRIEN, Defendant-Appellant.

Fourth District    No. 4—99—0992

Opinion filed September 12, 2000.

MYERSCOUGH, J., dissenting.

James B. Kuehl, of Thomas A. Bruno & Associates, of Urbana, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and David A. Hibben, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GARMAN delivered the opinion of the court:

Following a bench trial, the circuit court of Champaign County found defendant Lewis O'Brien guilty of driving an uninsured vehicle under section 3—707 of the Illinois Vehicle Code (Code) (625 ILCS 5/3—707 (West 1998)). The trial court imposed a fine of $501 plus court costs against defendant. The trial court subsequently denied defendant's motion for a new trial. Defendant appeals, arguing that the trial court erroneously found section 3—707 of the Code to be an absolute liability offense. He further contends that the State was required to prove a culpable mental state. Because it did not, it failed to prove him guilty beyond a reasonable doubt. We reverse.

## I. BACKGROUND

In June 1999, the State issued a traffic citation to defendant for driving an uninsured vehicle in violation of section 3—707 of the Code. The trial court held a bench trial on the citation in August 1999.

Officer Stephen Mechling testified that he is a police officer at the University of Illinois. On June 10, 1999, he observed that the automobile that defendant was driving had an expired registration sticker. Mechling stopped the vehicle. Defendant told Lewis that he had borrowed the car and did not know that the sticker had expired. Mechling checked the license plate number using the mobile computer in his squad car and learned that the owner of the automobile had an expired driver's license and expired license plates. Mechling believed that "there was a probable good chance there wasn't insurance on the vehicle." He then issued a citation for an uninsured motor vehicle. The State rested its case.

Defendant's attorney moved for a directed verdict, arguing that section 3—707 of the Code was not an absolute liability statute. The State had not proved its case because the evidence showed that defendant had no knowledge of the lack of insurance or any intent to commit the offense. The trial court denied the motion for a directed verdict, finding that section 3—707 is an absolute liability offense.

No other evidence was presented. The trial court found defendant guilty of driving an uninsured vehicle in violation of section 3—707. Defendant filed a posttrial motion reasserting the arguments he made at trial. The trial court denied his motion and sentenced him as aforesaid.

This appeal followed.

## II. ANALYSIS

Defendant argues that the trial court erred in finding that section 3—707 of the Code creates an absolute liability offense. As he did in the trial court, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of violating section 3—707 because it did not prove that he knew that the vehicle was uninsured or that he intended to commit the offense. We agree that the trial court erred in finding that section 3—707 of the Code creates an absolute liability offense.

■ Section 4—9 of the Criminal Code of 1961 (Criminal Code) provides:

> "Absolute Liability. A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in [s]ections 4—4 through 4—7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4—9 (West 1998).

The Illinois legislature has intended to limit the scope of absolute liability offenses. *People v. Gean*, 143 Ill. 2d 281, 285-86, 573 N.E.2d

818, 820 (1991), citing Ill. Ann. Stat., ch. 38, par. 4—9, Committee Comments—1961, at 226-28 (Smith-Hurd 1989) (now 720 ILCS Ann. 5/4—9, Committee Comments—1961, at 169-72 (Smith-Hurd 1993)). Absent clear indication that the legislature intended to impose absolute liability or an important public policy favoring absolute liability, courts are unwilling to interpret a statute as creating an absolute liability offense. *Gean*, 143 Ill. 2d at 286, 573 N.E.2d at 820-21; *In re K.C.*, 186 Ill. 2d 542, 546, 714 N.E.2d 491, 494 (1999). Instead, if at all possible, courts will infer the existence of a culpable mental state, even where the statute itself appears to impose absolute liability. *K.C.*, 186 Ill. 2d at 546, 714 N.E.2d at 494.

■ Turning to the statute at hand, section 3—707 of the Code provides as follows:

"No person shall operate a motor vehicle unless the motor vehicle is covered by a liability insurance policy in accordance with [s]ection 7—601 of this Code.

Any person who fails to comply with a request by a law enforcement officer for display of evidence of insurance, as required under [s]ection 7—602 of this Code, shall be deemed to be operating an uninsured vehicle.

Any operator of a motor vehicle subject to registration under this Code who is convicted of violating this [s]ection is guilty of a business offense and shall be required to pay a fine in excess of $500, but not more than $1,000. However, no person charged with violating this [s]ection shall be convicted if such person produces in court satisfactory evidence that at the time of the arrest the motor vehicle was covered by a liability insurance policy in accordance with [s]ection 7—601 of this Code." 625 ILCS 5/3—707 (West 1998).

While section 3—707, as written, does not impose incarceration, it does impose a fine in excess of $500. Therefore, section 3—707 can impose absolute liability only under one of two conditions: (1) clear evidence exists that the legislature so intended or (2) an important public policy favors absolute liability. We hold that neither condition exists.

■ The State argues that the best indicator of legislative intent is the plain language of the statute. Because section 3—707 provides no element of a mental state, the State suggests that the legislature intended to make it an absolute liability offense. However, " '[t]he mere absence of express language describing a mental state does not *per se* lead to the conclusion that none is required.' " *Gean*, 143 Ill. 2d at 286, 573 N.E.2d at 821, quoting *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 424, 375 N.E.2d 1297, 1304 (1978). We are unable to glean from the plain language of section 3—707 itself any legislative intent to create an absolute liability offense. We have also examined

the legislative history of section 3—707 of the Code and have likewise not found any clear indication of a legislative intent to make section 3—707 an absolute liability statute. 85th Ill. Gen. Assem., House Proceedings, May 18, 1988, at 126-47.

The State also argues that the insubstantial penalty provided in section 3—707 of the Code makes it more likely that section 3—707 creates an absolute liability offense. The State is correct that a factor to be considered in determining whether a statute creates an absolute liability offense is the possible punishment that can be imposed for a violation. *Gean,* 143 Ill. 2d at 287, 573 N.E.2d at 821. " '[W]here the punishment is great, it is less likely that the legislature intended to create an absolute liability offense.' " *Gean,* 143 Ill. 2d at 287, 573 N.E.2d at 821, quoting *People v. Sevilla,* 132 Ill. 2d 113, 122, 547 N.E.2d 117, 121 (1989). However, the insubstantial nature of the punishment, by itself, is insufficient to evidence a clear legislative intent to create an absolute liability offense. As we have stated, neither the plain language nor the legislative history of section 3—707 provides other evidence of such a clear legislative intent.

Relying on *People v. Avery,* 277 Ill. App. 3d 824, 661 N.E.2d 361 (1995), the State argues in the alternative that the public policy of highway safety favors imposition of absolute liability. In *Avery,* the statute at issue made driving while impaired by an alcohol concentrate of 0.10% or higher a criminal offense. *Avery,* 277 Ill. App. 3d at 829, 661 N.E.2d at 365. The *Avery* court found evidence of a legislative intent to impose absolute liability. The court also found an important public policy, namely, street and highway safety, that favored absolute liability. *Avery,* 277 Ill. App. 3d at 829-30, 661 N.E.2d at 365.

The State has erroneously likened the purposes and policies promoted by section 3—707 of the Code to those promoted by the statute in *Avery.* Unlike the statute in *Avery,* section 3—707 does not promote street and highway safety by regulating the way people drive. Rather, section 3—707 is concerned with the consequences after an accident has already occurred, particularly with the payment of medical costs and automobile repair expenses. By promoting liability insurance, section 3—707 seeks to reduce the number of instances in which a motorist struck by an uninsured vehicle is left to pay the medical bills and property damage himself. While these are certainly legitimate concerns, we find that they are not sufficient justification to warrant absolute liability under section 3—707 of the Code, particularly in the absence of any legislative intent to the contrary. We are persuaded by the fact that in *People v. Nunn,* 77 Ill. 2d 243, 251-52, 396 N.E.2d 27, 30-31 (1979), the Illinois Supreme Court found that the offense of leaving the scene of a vehicle accident involving death

or personal injury was not an absolute liability offense, although the public policies implicated thereby are equally if not more important than the public policy implicated by section 3—707 of the Code.

Having found that section 3—707 is not an absolute liability offense, we must determine what mental state applies. We conclude that knowledge is the appropriate mental element. See *Gean*, 143 Ill. 2d at 288-89, 573 N.E.2d at 822 (mental state required for conviction for possession of salvage certificates without authority and certificates of title without complete assignment is knowledge); *Sevilla*, 132 Ill. 2d at 124, 547 N.E.2d at 122 (knowledge is element of offense of failing to file a retailers' occupation tax return); *Nunn*, 77 Ill. 2d at 252, 396 N.E.2d at 31 (offense of leaving scene of an accident involving death or injury requires proof that defendant knew that the vehicle he was driving was involved in accident). The purpose of section 3—707 of the Code is to prevent motorists from driving uninsured vehicles. To show a violation of section 3—707 of the Code, the prosecution must prove that the accused knew that the vehicle he was driving was uninsured.

Here, the State presented no evidence that established that defendant knew the vehicle he was driving was uninsured. Accordingly, we reverse the decision of the trial court finding defendant guilty of a violation of section 3—707 of the Code and vacate his sentence.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and vacate the sentence imposed upon defendant.

Reversed.

KNECHT, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. The trial court did not err in finding section 3—707 of the Code creates an absolute liability offense. Section 3—707 imposes absolute liability because there is both clear evidence that the legislature so intended and an important public policy favors absolute liability. Section 3—707 of the Code, and a host of other corresponding or cross-referenced sections, including sections 7—601 and 7—602 and other sections found in the same chapter, all reflect, in their plain language, the legislature's intent to create absolute liability offenses. See 625 ILCS 5/3—707, 7—601, 7—602 (West 1998). These sections also espouse important public policies in favor of highway safety and financial responsibility.

Sections 7—601 (required liability insurance policy) and 7—602

(insurance card) are located in article VI (mandatory insurance) of chapter 7 (Illinois Safety and Family Financial Responsibility Law) of the Code. 625 ILCS 5/7—601, 7—602 (West 1998). These statutes, as well as those contained in the same chapters and articles, reflect in their plain language the legislative intent to create absolute liability offenses, as well as the important public policies of highway safety and financial responsibility. Illinois courts have often recognized that the public policy behind, or the purpose of, the insurance requirement is protection of the public. See *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Group*, 285 Ill. App. 3d 115, 120-21, 674 N.E.2d 52, 55 (1996).

Section 3—707 could not be clearer: "No person *shall operate* a motor vehicle unless the motor vehicle is covered by a liability insurance policy in accordance with [s]ection 7—601 of this Code." (Emphasis added.) 625 ILCS 5/3—707 (West 1998). Section 7—601 further specifies not only that one shall not operate, register, or maintain registration of an uninsured motor vehicle, but an owner may not permit someone *else* to do so. Section 7—602 then requires any operator of a motor vehicle to carry proof of insurance—very specific types of proof.

Moreover, section 3—707 creates a rebuttable presumption that anyone who cannot provide that very specific proof of insurance shall automatically be deemed to be operating an uninsured motor vehicle. However, the operator may rebut that presumption in court by producing proof that insurance existed at the time of the arrest. Nothing is said in the statute about knowledge or inadvertence.

The legislature has set forth the specific Code violations that are intent crimes. For example, under sections 7—602 (display of false insurance) and 7—603 (making or selling invalid or counterfeit insurance cards) (625 ILCS 5/7—602, 7—603 (West 1998)), knowledge is required; and violation of section 7—602 is a Class A misdemeanor and violation of section 7—603 is a Class 4 felony. Knowledge is clearly an element required to prove display of false insurance:

> "No person shall display evidence of insurance to a law enforcement officer, court, or officer of the court, *knowing* there is no valid liability insurance in effect on the motor vehicle as required under [s]ection 7—601 of this Code or knowing the evidence of insurance is illegally altered, counterfeit, or otherwise invalid as evidence of insurance required under [s]ection 7—602 of this Code. If the law enforcement officer issues a citation to a motor vehicle operator for displaying invalid evidence of insurance, the officer shall confiscate the evidence for presentation in court.
>
> Any person convicted of violating this [s]ection is guilty of a

Class A misdemeanor." (Emphasis added.) 625 ILCS 5/3—710 (West 1998).

Knowledge or intent is not an element required to prove a violation of section 3—707. The legislature was clear. A vehicle cannot be driven without insurance. Vehicle insurance is mandatory. The legislative policy is set forth throughout these statutes and can be gleaned from their titles, for chapter 7 of the Code "Illinois Safety and Family Financial Responsibility Law" (625 ILCS 5/7—100 through 7—708 (West 1998)), as well as the plain language of the statute. The public is disserved by ignoring the evident legislative intent to promote safety and family responsibility here.

Moreover, in *Nunn*, 77 Ill. 2d at 251-52, 396 N.E.2d at 30-31, the supreme court found that the offense of leaving the scene was not an absolute liability offense; however, not because the offense failed to implicate an important public policy such as highway safety. The case did not address this issue because that statute, in its language and history, clearly required knowledge of the driver that there had been a collision. There is no such language in 3—707 to indicate that the driver must know or be aware that there is no insurance on the vehicle. In fact, the driver has an affirmative duty to see that there is proof of insurance in the vehicle.

Similarly, vehicles are required to be registered and licensed with the Secretary of State and proof of registration and display of license plates are required to be carried and exhibited upon demand.

"(a) Every registration card for a vehicle of the second division weighing more than 8,000 pounds or any vehicle of the second division weighing 8,000 pounds or less towing a trailer, except pole trailer or semitrailer shall at all times be carried in the vehicle to which it refers or shall be carried by the person driving or in control of such vehicle who shall display the same upon demand of a police officer or any officer or employee of the Secretary of State.

(b) The provisions of this [s]ection requiring that a registration card be carried in the vehicle to which it refers or by the person driving the same shall not apply when such card is used for the purpose of making application for renewal of registration or upon a transfer of registration of said vehicle." 625 ILCS 5/3—411(a), (b) (West 1998).

Similarly, no person shall operate a vehicle with a cancelled, suspended, or revoked registration, although an owner must not *knowingly* permit such a vehicle to be operated upon a highway:

"(a) No person shall operate, nor shall an owner knowingly permit to be operated, upon any highway:

(1) A vehicle the registration of which has been cancelled, suspended[,] or revoked; or

* * *

(b) No person shall use, nor shall any owner use or knowingly permit the use of any Illinois registration plate, plates or registration sticker, or any Illinois Reciprocity Permit or Prorate Decal which has been cancelled, suspended[,] or revoked." 625 ILCS 5/3—702(a)(1),(b) (West 1998).

The operator (as opposed to an owner) of the vehicle is subject to absolute liability for this offense, which is also a Class A misdemeanor. 625 ILCS 5/3—702(c) (West 1998).

The statutory scheme and language set forth in the Code evince both legislative intent to create absolute liability and an important public policy—highway safety and financial responsibility—favoring absolute liability. I would affirm the trial court.