**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170013-U

Order filed February 5, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0013 Circuit No. 15-CF-53 |
| PATRICK W. ROCHE, | ) ) ) | Honorable Norma Kauzlarich, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CARTER delivered the judgment of the court.
Justices McDade and Wright concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:   Defendant's sentence of five years of imprisonment for an aggravated DUI conviction was not excessive.

¶ 2      A jury found defendant guilty of aggravated driving under the influence (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(c) (West 2014)). Defendant was sentenced to five years of imprisonment and a year of mandatory supervised release (MSR). On appeal, defendant argues: (1) the trial court erred in considering in aggravation the factors of great bodily harm and the need to deter others when determining his sentence because both of those factors were inherent in the offense

of aggravated DUI; and (2) a sentence of five years of imprisonment was excessive where the sentencing judge failed sufficiently consider a sentence of probation and failed to give sufficient weight to factors in mitigation. We affirm.

¶ 3                                                    I. Background

¶ 4          Defendant was charged with two counts of aggravated DUI (625 ILCS 5/11-501(a)(2), (d)(1)(C) (West 2014) (driving under the influence of alcohol) and 625 ILCS 5/11-501(a)(1), (d)(1)(C) (West 2014) (driving while having a BAC of 0.08 or greater)). In both aggravated DUI counts, the State alleged that defendant had been involved in a motor vehicle accident on January 25, 2015, which resulted in great bodily harm to the victim, Casey Jones, with defendant's DUI violation having been the proximate cause of those injuries. Defendant was also charged with disobeying a traffic control device for allegedly driving through a red light.

¶ 5                                                    A. Jury Trial

¶ 6          At defendant's jury trial, the parties stipulated that: on January 25, 2015, at approximately 7:12 p.m., defendant's vehicle was in a collision with another vehicle at an intersection in Moline, Illinois; as a result of the collision, the driver of the other vehicle, Casey Jones, and his passenger, Ashley Welch, were transported to the hospital for treatment for their injuries; Jones was further transported by a Med Force helicopter to another hospital for additional treatment for his injuries; Jones's injuries included lacerations to the head, a ruptured diaphragm, a laceration to his spleen, an acute kidney injury/the loss of kidney function, a ruptured bladder, pelvis fractures, and internal bleeding; Jones underwent "numerous surgeries and medical procedures for the injuries sustained as a result of the vehicle collision"; and while Jones was hospitalized, he had to be connected to a ventilator machine to assist with his breathing. The stipulation further indicated that Jones was hospitalized until March 5, 2015.

¶ 7        Evidence presented at trial showed that both Jones and Welch were in their mid-20's at the time of the accident and had just moved into an apartment together the day prior. After the collision, Welch only recalled that Jones had asked her if she was okay and that Jones's head was bleeding. The next thing Welch remembered was waking up in the hospital. Jones could not recall the accident. He only recalled waking up in the hospital weeks later, some time at the end of February. Witnesses to the collision testified that defendant went through a red light without slowing down and crashed into Jones's vehicle. A responding police officer saw broken beer bottles and could smell the beer spilled throughout the inside of defendant's truck. Defendant told the officer that the bottles had broken in the crash. The officer administered field sobriety tests to defendant, which indicated defendant was impaired. Defendant was arrested for DUI. A breathalyzer test was administered to defendant at 8:08 p.m., which showed defendant had a BAC level of .092.

¶ 8        The jury found defendant guilty of disobeying a traffic control device and of both counts of aggravated DUI.

¶ 9                                    B. Sentencing

¶ 10        At the sentencing hearing, the State submitted a victim impact letter from Jones's parents and information regarding Jones's medical bills. The victim impact statement indicated that: "[n]o person should ever have to endure the pain and suffering that [Jones] endured"; in the weeks following the accident it was not known whether Jones "was going to make it from one day to the next"; Jones had been diagnosed with a certain condition that 30% of patients do not survive that resulted from the internal injuries he sustained in the collision; a nurse told Jones's parents that Jones "almost did not make it" four different times during his hospitalization; "[d]uring his 6-week stay in Peoria his hospital bills totaled over 1 million dollars"; Jones

3

underwent an additional four weeks of physical therapy; and Jones's parents requested the maximum sentence allowed to prevent defendant from "continu[ing] on a path of destruction until he kills someone."

¶ 11      Defendant made a statement in allocution, during which he specifically apologized to Jones's family and his own family. Defendant asked for mercy and indicated he was on disability and "had a heart issue" since the age of 34. Defendant indicated that he was "sorry for [Jones]" and sorry that Jones had a hard time in the hospital. He also indicated he would not be around alcohol and a vehicle at the same time again.

¶ 12      The presentencing investigation (PSI) report indicated that defendant had a misdemeanor DUI conviction in 1998, for which he received 12 months of court supervision, and four traffic offenses (disregarding a traffic control device (1991), disregarding a traffic control device and speeding (1994), and failure to yield the right of way (2009)). The PSI report also indicated that defendant incurred a traumatic brain injury in 1999 after a motorbike accident, his father died of a heart attack when defendant was 13 years old, and defendant suffered the first of many heart attacks at the age of 34. Five letters were received as part of the PSI report in support of defendant, indicating that defendant was helpful, caring, kind, and dependable; he cared for his mother, who lived in the same apartment building as defendant; and defendant suffered from a genetic heart condition.

¶ 13      The prosecutor indicated an extended sentencing range of 1 to 12 years of imprisonment was applicable in this case. The prosecutor stated:

        "When discussing the factors in aggravation, the Defendant's conduct caused or
        threatened serious harm. In this case it did cause serious harm. That was the basis
        for the upgraded aggravated DUI charge. I think the Court is well aware of the

4

injuries that the victims in this case sustained and well aware of how long it took them to recover and the financial impact that this—this accident had on Mr. Jones and Ms. Welch."

¶ 14    The prosecutor noted that this was defendant's second DUI, but defendant had no other criminal history aside from a few traffic tickets. The prosecutor argued that a harsher sentence was necessary "to deter others from committing the same crime." The prosecutor indicated that no mitigating factors applied other than defendant compensating the victim through his insurance coverage, noting the amount of the victims' medical bills was "extreme," it was unclear how much of those bills were covered by defendant's insurance, and defendant had not personally compensated the victims anything. The prosecutor argued for a term of imprisonment that was reasonable "as compared to the effect that this was going to have on the lives of Casey Jones and Ashley Welch" and argued that any "stint" defendant had in the Department of Corrections would be small in comparison to what the victims "have to face for the rest of their lives." The prosecutor requested that defendant be sentenced to five years of imprisonment.

¶ 15    At that point in the hearing, the sentencing judge noted that Jones was not in court and asked Jones's mother about the status of Jones's health. Jones's mother indicated that Jones was "doing really well" and that he was back to work. She further indicated that he was driving and had his own apartment. Jones's mother indicated that Jones had lost his former apartment because he could not be in the apartment after the accident, he was in the hospital for 10 weeks, and he was "doing well now, but he's going to have a scar forever."

¶ 16    Defendant's attorney acknowledged that the incident "was a terrible accident" and Jones "will have whatever repercussions for the rest of his life." In mitigation, defendant's attorney argued that defendant's BAC level of .092 was "on the lower end" of levels seen in DUI cases,

5

defendant had motor vehicle insurance at the time of the incident, defendant suffered from a long-time heart condition, defendant cared for his mother, defendant did good in the community, and defendant had no criminal history other than an almost 20-year-old DUI and some traffic tickets. Defendant's attorney argued for a sentence of probation.

¶ 17    In sentencing defendant, the sentencing judge stated:

"In considering the factors in mitigation, the Court has reviewed all of those factors, and [defendant's] conduct caused serious physical harm to Mr. Jones, so that doesn't apply [referring to the mitigating factor that the defendant's criminal conduct neither caused nor threatened serious physical harm to another].

Number two [referring to the mitigating factor that the defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another], I don't know if he did or did not contemplate that his criminal conduct would cause or threaten serious physical harm, but he impresses upon me that he's an intelligent man and he has largely led a law-abiding life. So I will have to assume that it might have crossed his mind, and the rest of these really— he has no history of prior delinquency. Conduct is a result of the circumstance unlikely to recur. Character and attitude of defendant indicate that he's unlikely to commit another crime.

And then the factors in aggravation is the same.  The defendant's conduct caused or threatened serious physical harm, and the only other one that might apply would be that the sentence is necessary to deter others from committing the same crime.

6

I'm in a position where it is essentially a no win. [Defendant] is not a bad person. He made a poor choice and unfortunately for Mr. Jones and his family totally innocent people minding their own business doing absolutely nothing wrong but driving home.

And up until today, [defendant's] attitude had been that he was wronged, that he didn't have a fair trial, the whole nine yards *** to the point that I asked for a fitness evaluation because he didn't seem to be responsive to any of my questions.

And I've read each and every single letter in support of you [defendant], and you seem like you're a good person, and I understand that.

But what do I explain to Mr. Jones and his family? How do I balance out your conduct and what it resulted in?

* * *

***  There is no time that I can possibly send you to prison for that will ever appease or make up to [the victim] or his family what they under—went through. I see bills here that amount in over a million dollars. Mr. Jones is alive.

And yes, *** I've seen BAC levels of .224, .3, .36. I even had one that was a .43. ***

But the bottom line here is that [defendant] made a poor choice.  He's not a bad person.  And I certainly don't want to send a message that if you're a little bit drunk, it's okay to drive.

7

So, [defendant], I am going to agree with the State. I'm sentencing you to a term of five years in the Illinois Department of Corrections followed by a one-year mandatory supervised release period.

* * *

As for the Jones family, I could send him to prison for a hundred years if I was authorized to so, but that's not going to take away everything that your son or yourselves went through. There's nothing that is going to take that away. *** I have to take into account that [defendant] has virtually no criminal history whatsoever.

The issue here is—for me that there was a victim who was seriously injured and is going to be suffering, suffered already from the point of impact and changed his life and the course of his life, so—and whatever small measure that helps, I mean, that's basically to shout out to the community, [d]on't drink and drive. Pick somebody to drive you home.  If you have one drink, that's one drink too many.  That's the bottom line."

¶ 18　　　　The written sentencing order indicated that defendant was sentenced to five years of imprisonment and one year of mandatory supervised release on count I (aggravated DUI (625 ILCS 5/11-501(a)(2), (d)(1)(C) (West 2014))).

¶ 19　　　　　　　　　　　　　　C. Motion to Reconsider

¶ 20　　　　Defendant filed a motion to reconsider, arguing the five-year prison sentence should be lowered in light of his poor health related to his heart condition and his father having had died from a similar heart condition at the age of 41 years old. (Defendant was 56 years old). The trial

8

court indicated that defendant's health information had been available at the time of sentencing, noting that it could not speculate as to defendant's future health. The trial court judge stated:

> "[H]is sentencing range was 1 to 12 years. I chose five years because of his lack of criminal history. I took into account all the factors in mitigation, all the factors in aggravation, and I took into account the victim impact statement, that Mr. Jones is going to suffer from health issues the rest of his life because of [defendant's] actions; hence, the reason of five years."

¶ 21 The trial court denied defendant's motion to reconsider. Defendant appealed.

¶ 22                                          II. ANALYSIS

¶ 23 On appeal, defendant argues that his sentence was excessive because: (a) the trial court improperly considered the factors of great bodily harm and deterrence in aggravation when those factors are inherent in the offense of aggravated DUI; and (b) the trial court failed to properly consider various mitigating factors. Defendant asks this court to reduce his five-year sentence or remand this case to the trial court for resentencing or the imposition of probation. The State argues that the trial court did not err in sentencing defendant.

¶ 24 A trial court's sentencing decisions are entitled to great deference and weight, and the standard of review is whether the trial court abused its discretion in imposing the sentence. *People v. Spencer*, 229 Ill. App. 3d 1098, 1102 (1992) (citing *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). A trial court has wide latitude in sentencing a defendant within the statutory sentencing range prescribed for the offense so long as the trial court "does not consider incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors." *Id.* (quoting *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990)).

¶ 25                                A. Improper Aggravating Factors

9

¶ 26    Defendant first argues his sentence was excessive because the sentencing judge improperly considered the aggravating factors of great bodily harm and deterrence, which defendant argues are factors inherent in the offense of aggravated DUI. Defendant failed to preserve this issue for our review on appeal but argues that a sentence that was based on the consideration of an improper factor is reviewable under the plain error doctrine. The State argues that defendant's argument cannot be reviewed under the plain error doctrine where the record shows that defendant was admonished by the trial court of his right to file a motion to reconsider his sentence and that any claims that were not raised in a motion to reconsider should be deemed waived.

¶ 27    In order to preserve an alleged error for consideration on appeal, a defendant must object to the error in the trial court and raise the error in a posttrial motion. *People v. Sebby*, 2017 IL 119445, ¶ 48. Issues not raised at trial and in a posttrial motion are forfeited. *Id*. However, under Illinois Supreme Court Rule 615(a), substantial errors (known as plain errors) "may be noticed although they were not brought to the attention of the trial court." *Id.* (citing Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)). A reviewing court may exercise its discretion and excuse a defendant's procedural default to review a plain error when: (1) "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* (citing *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (quoting *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).

¶ 28       A circuit court's improper consideration of a factor in aggravation is a clear error that affects the substantial rights of a defendant under the second prong of the plain error doctrine. *People v. Martin*, 119 Ill. 2d 453, 458-60 (1988) (holding that the trial court's consideration of a factor inherent in the offense as an aggravating factor "clearly affected the defendant's fundamental right to liberty"); *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 17 (reversing the defendant's sentence under the second prong of the plain error doctrine where trial court improperly considered the aggravating factor that defendant's conduct caused or threatened serious harm, which was a factor inherent in the offense of first-degree murder). Therefore, despite defendant's failure to preserve this issue for our review on appeal, we may consider it under the second prong of the plain error doctrine. The first step in plain error analysis, however, is determining whether a clear or obvious error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 29       The range of sentences permissible for an offense is set by statute. *People v. Winningham*, 391 Ill. App. 3d 476, 484 (2009). The aggravating factors that may be applied during sentencing are also set by statute. *People v. Johnson*, 2019 IL 122956, ¶ 38 (citing 730 ILCS 5/5-5-3.2 (West 2014)). A factor that is implicit in the offense cannot be used by the sentencing judge in aggravation to justify a more severe sentence than might otherwise be imposed. *People v. Saldivar*, 113 Ill. 2d 256, 266-67 (1986) (citing *People v. Conover*, 84 Ill. 2d 400, 404 (1981)). However, the rule against such a double enhancement is not intended to be so rigidly applied as to restrict the function of the sentencing judge by forcing him or her to ignore factors that are relevant to the imposition of a sentence. *Id.* at 268.

¶ 30       The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful

11

citizenship." *Id.* (quoting Ill. Const. 1970, art. I, sec. 11). A determination of the proper penalty to impose must, therefore, be based upon the particular circumstances of each individual case and depends upon many relevant factors, including the defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment, as well as the nature and circumstances of the offense, together with the nature and extent of each element of the offense as committed by the defendant. *Id.* Sound public policy requires that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. *Id.* at 269. Certain criminal conduct may warrant a harsher penalty than other conduct, even though punishable under the same statute. *Id.*

¶ 31        The prohibition against the dual use of an aggravating factor—a double enhancement—is based upon the assumption that the legislature considered the factors inherent in the offense when designating the appropriate range of punishment for a criminal offense. *Johnson*, 2019 IL 122956, ¶ 38. However, "the commission of any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm or threatened harm." *Saldivar*, 113 Ill. 2d at 269. Our supreme court has stated:

> "While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted*." (Emphases in original.) *Id.*

¶ 32        In *Saldivar*, the defendant fatally stabbed the victim twice in the chest after the victim had lured defendant to his home under the guise of a party taking place, resulting in the two men

being alone. *Id*. According to defendant's confession, the victim made sexual advances toward defendant, a struggle ensued, and defendant stabbed the victim. *Id.* at 260-61. Defendant was charged with murder, and, after a bench trial, he was found guilty of the lesser included offense of voluntary manslaughter. *Id.* at 259-61. In sentencing defendant to seven years of imprisonment, the trial court found as the primary factor in aggravation, "the terrible harm that was caused to the victim," noting that defendant's conduct caused death. *Id.* at 264. The Illinois Supreme Court in *Saldivar* held that in sentencing a defendant on a conviction for voluntary manslaughter it was permissible for the trial court to consider the force employed and the physical manner in which the victim's death was brought about when applying the aggravating factor that the defendant's conduct caused serious harm to the victim. *Id*. at 271 (citing *People v. Andrews*, 105 Ill. App. 3d 1109 (1982) and *People v. Hughes*, 109 Ill. App. 3d 352 (1982)). In applying that principle, our supreme court found that the trial court's consideration of the serious harm defendant caused to the victim in aggravation was improper because the finding "was not directed at the degree or gravity of defendant's conduct *** or the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." *Id.* at 271-72. Rather, the record showed the trial court focused on the result of the defendant's conduct, which was the victim's death—a factor implicit of the offense of voluntary manslaughter. *Id.* at 272.

¶ 33        In *Martin*, our supreme court determined that the trial court erred in considering the harm to the victim in aggravation when imposing the maximum penalty for involuntary manslaughter. *Martin*, 119 Ill. 2d at 461. Aside from the harm to the victim, the only other aggravating factor considered by the trial court was that the sentence was necessary to deter others, which our supreme court in *Martin* was noted only marginally applicable to an offense involving

13

unintentional conduct. *Id.* at 458-59. The *Martin* court noted the trial court had focused solely on the victim's death in sentencing because there was no extreme degree of harm to be considered where defendant's gun had been unintentionally discharged. *Id.* at 461. For those reasons, the *Martin* court concluded that the trial judge improperly considered the victim's death in aggravation during sentencing. *Id.*

¶ 34      In *Sanders*, this court reversed the defendant's sentence of 45 years of imprisonment for first-degree murder under the second prong of the plain error doctrine, holding the trial court had improperly considered in aggravation the factor that defendant's conduct caused or threatened serious harm, which was a factor inherent in the offense of first-degree murder. *Sanders*, 2016 IL App (3d) 130511, ¶ 17. In sentencing the defendant, the trial court in *Sanders* stated in aggravation that defendant's conduct caused harm, and then the trial court acknowledged that the factor was inherent in the offense but reasserted that the conduct "did occur." *Id.* ¶¶ 6, 14. This court reversed defendant's sentence, finding "the trial court's express finding that the defendant's conduct caused or threatened serious harm, a factor inherent in the offense of first degree murder, impinged on the defendant's right not to be sentenced based on an improper factor and affected his fundamental right to liberty." *Id.* ¶ 17 (citing *Martin*, 119 Ill. 2d at 458).

¶ 35      In *Solano*, this court held that the degree of harm to a passenger in the defendant's vehicle was an aggravating factor that the trial judge could properly consider when sentencing the defendant on a class 4 felony DUI conviction, even though serious bodily harm was implicit in the offense. *People v. Solano*, 221 Ill. App. 3d 272, 274 (1991) (citing *Saldivar*, 113 Ill. 2d 256). The passenger riding in the 16-year-old defendant's vehicle was severely injured and remained in a coma for two weeks after defendant, who had been drinking, drove around railroad gates, causing his vehicle to collide with a train. *Id.* at 273. The trial court sentenced the

14

defendant to 1½ years of imprisonment. *Id*. at 272-73 (defendant was also sentenced to 2 years and 4 months of imprisonment for reckless homicide as the result of another passenger being killed in the collision). On appeal, in affirming the sentence, this court indicated that the trial judge had "made it quite clear" that he was considering the degree of harm to the victim, which was not error. *Id*. at 274.

¶ 36    In *Rennie*, the 16-year-old defendant was convicted of two counts of aggravated DUI (cannabis) after driving her car into oncoming traffic, striking a motorcycle, injuring the driver of the motorcycle, and killing the motorcycle driver's wife. *People v. Rennie*, 2014 IL App (3d) 130014, ¶ 2. At the sentencing hearing, the surviving victim testified about his debilitating injuries, which included the loss of one leg and the loss of the use of one of his arms. *Id. ¶* 4. The trial court found in aggravation that defendant's conduct caused or threatened serious harm and that a prison sentence was necessary to deter others from committing the same crime. *Id. ¶* 5. The trial court explained that the surviving victim was suffering and will continue to suffer. *Id.* The trial court sentenced the 16-year-old defendant to concurrent terms of six years of imprisonment (for aggravated DUI resulting in death) and two years of imprisonment (for aggravated DUI resulting in great bodily injury). On appeal, this court affirmed defendant's sentence, holding that it was not improper for the trial court to consider the degree of harm suffered by one of defendant's victims in sentencing defendant and defendant's sentence was not excessive. *Id. ¶* 32.

¶ 37    Here, contrary to defendant's argument, the trial court did not consider an improper factor in this case. The burden is on the defendant to establish that the court improperly considered an inherent factor. *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). Whether the

trial court relied upon an improper factor at sentencing is a question of law that is reviewed *de novo*. *People v. Arbuckle*, 2016 IL App (3d) 121014-B, ¶ 65.

¶ 38    In this case, at sentencing, the trial court announced the two aggravating factors found to be applicable in this case: defendant's conduct caused or threatened serious physical harm and the need to deter others. The trial court then indicated to defendant, "there is no time that I can possibly send you to prison for that will ever appease or make up to [the victim] or his family what they under—went through" and additionally referenced "everything" that Jones and his family went through. These statements demonstrate that the trial court contemplated the degree of harm Jones suffered as an aggravating factor and not just the mere fact that defendant's DUI resulted in great bodily harm. The stipulation, the victim impact statement, and Jones's medical bills showed that as a result of the collision, Jones incurred life threatening internal injuries, almost died multiple times, required a ventilator to assist with his breathing, underwent numerous surgeries and medical procedures, was hospitalized for six weeks, incurred medical bills totaling over one million dollars, and underwent an additional four weeks of physical therapy. We find no error in the trial court considering the degree of harm Jones suffered in aggravation when sentencing defendant despite "great bodily harm or permanent disability or disfigurement to another" being an element of the aggravated DUI offense. We presume the trial court considered only appropriate factors in sentencing unless the record affirmatively shows otherwise. See *People v. Quintana*, 332 Ill. App. 3d 69, 109 (2002). The burden was on defendant to establish an inherent factor was improperly considered in aggravation and, from this record, we cannot say that defendant has met that burden.

¶ 39    Defendant also argues that the record rebuts the trial court's remark that the accident had changed Jones's life and the course of his life because at sentencing the judge asked Jones's

16

mother about Jones's welfare and she indicated he was doing well and was back to work. The evidence showed that Jones had moved into an apartment the day prior to the accident with his then girlfriend but could not be in the apartment after the collision (presumably because he was hospitalized). The parties' stipulation (providing that Jones's injuries included a ruptured diaphragm, laceration to his spleen, acute kidney injury/loss of kidney function, ruptured bladder, pelvis fractures, and internal bleeding), the victim impact statement, and Jones's medical bills amounting to over one million dollars sufficiently supported the trial court's finding that the collision changed Jones's life and the course of his life. In fact, during sentencing, defendant's attorney acknowledged that Jones would have "whatever repercussions" for the of rest his life. Consequently, the trial court did not abuse its discretion in finding the collision had changed Jones's life and the course of his life.

¶ 40                                    B. Deterrence

¶ 41        Defendant also argues that the trial court erred in relying on the need to deter others from driving while under the influence because deterrence is inherent in the offense of aggravated DUI and the trial court's reliance on deterrence as a factor in aggravation was an improper double enhancement. The State argues that this contention is contrary to established law, which authorizes a sentencing court to consider the need to deter others in aggravation during sentencing.

¶ 42        Defendant contends that the offense of aggravated DUI was enacted as an absolute liability offense in order to deter drunk driving, making deterrence "a component of the strict liability offense [of DUI] itself." In support of his contention, defendant cites to *Martin*, in which the Illinois Supreme Court held that the need to deter others did not justify sentencing the defendant to the maximum sentence for involuntary manslaughter where there were no other

17

applicable aggravating factors because deterrence had, at best, "marginal applicability" to an unintentional killing and there were multiple mitigating factors. *Martin*, 119 Ill. 2d at 459. This case is distinguishable from *Martin* because defendant was not sentenced to the maximum sentence and, also, the act of driving while under the influence of alcohol is an intentional act. See *Winningham*, 391 Ill. App. 3d at 487 ("[a] person who makes the conscious and intentional decision to drive drunk presents an imminent danger to the public"); *People v. Avery*, 277 Ill. App. 3d 824, 827 (1995) (driving while intoxicated is not innocent conduct).

¶ 43  Defendant additionally cites *Avery* in support of his contention that deterrence is a factor inherent in the offense of aggravated DUI. However, the issue in *Avery* was whether the legislature intended to require a mental state under circumstances that changed a misdemeanor DUI to a class 4 felony aggravated DUI. *Id.* at 830 (insanity defense was unavailable to defendant regarding his felony aggravated DUI charges). *Avery* lends no support for defendant's contention that consideration of the need to deter others in aggravation would constitute an improper double enhancement regarding sentencing for an aggravated DUI conviction.

¶ 44  There is no merit to defendant's contention that deterrence is a component of a DUI offense so that the consideration of the need to deter others as an aggravating factor is an improper double enhancement. See 730 ILCS 5/5-5-3.2(a)(7) (West 2014) (whether a sentence is necessary to deter others from committing the same crime "shall be accorded weight in favor of imposing a term of imprisonment"). "Although the legislature has increased DUI penalties, the judiciary must do its part by recognizing the terrible consequences of this preventable crime and imposing sentences *** that will address the need to both punish offenders and deter future offenses." See *Winningham*, 391 Ill. App. 3d at 485-86. "DUI is not only deterrable, it is one of the most deterrable offenses." *Martin*, 289 Ill. App. 3d at 376. Therefore, the trial court's

18

considerations of the need to deter others as an aggravating factor did not constitute an improper double enhancement.

¶ 45                                   II. Excessive Sentence

¶ 46        Defendant also argues on appeal that his five-year prison term for aggravated DUI was excessive in light of his strong rehabilitative potential, lack of prior felony convictions, strong family support, medical disability, and the lack of any evidence that a prison term was necessary to protect the public. Defendant notes that the aggravated DUI in this case was "a probationable offense with an authorized range of imprisonment of 1 to 12 years" and argues that the trial court abused its discretion by failing to sufficiently consider a term of probation and by disregarding or undervaluing the mitigating evidence.  Defendant requests that this court reduce his sentence or remand for the imposition of a term of probation. The State argues that the trial court properly considered the applicable mitigating and aggravating factors and did not abuse its discretion in sentencing defendant.

¶ 47         "[T]he range of sentences permissible for a particular offense is set by statute." *People v. Fern*, 189 Ill. 2d 48, 55 (1999). "Within that statutory range, the trial court is charged with fashioning a sentence based upon the particular circumstances of the individual case, including the nature of the offense and the character of the defendant." *Id.* (quoting *People v. Barrow*, 133 Ill. 2d 226, 281 (1989)). "[A] sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *Id*. at 54.  A reviewing court must afford great deference to the trial court's judgment regarding sentencing because that court, having observed the defendant and the proceedings, is in a far better position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits than a

19

reviewing court, which must rely on a "cold" record. *Id*. at 53. When considering the propriety of a sentence, the reviewing court must not substitute its judgment for that of the trial court and may not reduce a defendant's sentence unless the sentence was an abuse of the trial court's discretion. *Id*.

¶ 48        Generally, any person convicted of DUI is guilty of a Class A misdemeanor, wherein a any sentence of imprisonment "shall be a determinate sentence of less than one year." 625 ILCS 5/11-501(a), 501(c)(1) (West 2014); 730 ILCS 5/5-4.5-55(a) (West 2014). Under section 11-501(d)(1)(C) of the Vehicle Code, a person commits a Class 4 felony aggravated DUI when the person, in committing a DUI violation, "was involved in a motor vehicle accident that resulted in great bodily harm or permanent disability or disfigurement to another, when the violation was a proximate cause of the injuries." 625 ILCS 5/11-501(d)(1)(C) (West 2014). If a defendant is convicted of an aggravated DUI under section 11-501(d)(1)(C), "the defendant, if sentenced to a term of imprisonment, shall be sentenced to not less than one year nor more than 12 years." 625 ILCS 5/11-501(d)(2)(F) (West 2014). Therefore, the applicable sentencing range in this case included a possible prison term of 1 to 12 years.

¶ 49        Here, defendant acknowledges that the trial court had the discretion to select the appropriate sentence within the applicable statutory range. The record shows that in addition to considering the mitigating factors, the trial court properly considered the degree of harm Jones suffered and the need to deter others from committing DUI offenses in aggravation. The record also shows that the trial court noted defendant had shown a lack of remorse during the pendency of the case. See *People v. Mulero*, 176 Ill. 2d 444, 462 (1997) (a defendant's remorse or lack thereof is a proper subject for consideration at sentencing). Additionally, at the hearing on the motion to reconsider, the trial court specifically indicated it considered all the factors in

20

aggravation and mitigation, as well as the victim impact statement. Contrary to defendant's contention, the record is clear that the trial court considered the victim impact statement. A victim impact statement shall be considered by the sentencing court. See 725 ILCS 120/6(a-1) (West 2014) (providing that where a defendant has been convicted of a violation of any statute relating to the operation or use of motor vehicles that resulted in great bodily harm or death, the person who suffered great bodily harm, the injured person's representative, or the representative of a deceased person shall have the right to address the court regarding the impact that the defendant's criminal conduct has had upon them, and the court "shall consider any impact statement presented along with all other appropriate factors in determining the sentence of the defendant"); *People v. Mauricio*, 2014 IL App (2d) 121340, ¶ 19 ("at sentencing a trial court many consider victim-impact evidence insofar as it pertains to the specific harm caused by the crime"). We find no abuse of the trial court's discretion in its consideration of the applicable sentencing factors, and we cannot say defendant's sentence of five years of imprisonment is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. See *Fern*, 189 Ill. 2d at 54.

¶ 50    Nonetheless, we will specifically address defendant's contention that the trial court erred by failing to consider a term of probation. The standard of review for an alleged excessive sentence is whether a trial court abused its discretion. *People v. Kuesis*, 83 Ill. 2d 402, 409-10 (1984) (citing *Perruquet*, 68 Ill. 2d at 153). However, the standard as to whether the trial court should impose probation or conditional discharge as opposed to imprisonment is contained in section 5-6-1 of the Unified Code of Corrections. *Id.* Section 5-6-1(a) of the Unified Code of Corrections provides:

21

"(a) Except where specifically prohibited by other provisions of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that:

> (1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or

> (2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice; or

> (3) a combination of imprisonment with concurrent or consecutive probation when an offender has been admitted into a drug court program under Section 20 of the Drug Court Treatment Act is necessary for the protection of the public and for the rehabilitation of the offender. 730 ILCS 5/5-6-1 (West 2014).

¶ 51     Our supreme court has stated:

> "Substantial compliance with section 5-6-1 may exist even if the judge does not specifically say that 'imprisonment is necessary for the protection of the public' or that 'probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice.' If the record demonstrates substantial compliance with this requirement, then a reviewing court may alter the sentencing judge's disposition only upon a finding of an abuse of discretion (in that a sentence is excessive). [citation omitted.]" *Kuesis*, at 408-09 (quoting *People v. Cox*, 82 Ill. 2d 268, 281 (1980)).

22

¶ 52     While it is preferable for a court to expressly state which basis it is relying upon for refusing to sentence a defendant to probation or conditional discharge (*Id.* at 409-10), the record in this case shows that the trial court substantially complied with section 5-6-1 when sentencing defendant. As indicated previously, the trial court did not abuse in its discretion by imposing a sentence of five years of imprisonment. We, therefore, affirm defendant's sentence.

¶ 53                                    CONCLUSION

¶ 54     The judgment of the circuit court of Rock Island County is affirmed.

¶ 55     Affirmed.