2022 IL App (1st) 210689-U

FIFTH DIVISION
February 25, 2022

No. 1-21-0689

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 12 CR 20153 |
| | ) | |
| TERRELL LEWIS, | ) | Honorable |
| | ) | James M. Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

PRESIDING JUSTICE DELORT delivered the judgment of the court.
Justices Hoffman and Cunningham concurred in the judgment.

**ORDER**

*Held*: We affirm defendant's conviction for armed habitual criminal because the evidence established he had been convicted of predicate offenses two "times," as required by statute.

¶ 1 After a bench trial, defendant Terrell Lewis was found guilty of armed habitual criminal

(AHC) (720 ILCS 5/24-1.7 (West 2012)) and sentenced to 12 years' imprisonment. He appeals,

arguing the evidence at trial was insufficient to establish he had been convicted two "times" of predicate offenses, as required by the AHC statute. We affirm.[1]

¶ 2                                    BACKGROUND

¶ 3     Defendant was charged by indictment with six counts arising from an incident on February 26, 2012, including count II for AHC. The State dismissed count V before trial.

¶ 4     At trial, Troy Hanson testified that he pleaded guilty to possession of a controlled substance in August 2001. In February 2012, Hanson worked with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) as an informant, for which the ATF paid him.

¶ 5     On February 26, 2012, Hanson contacted ATF agents, including Brent Bollenberg, and relayed that Leon Cooks offered to sell Hanson a firearm. Hanson met with ATF agents, who provided him with money for the purchase and installed surveillance equipment in his vehicle. Hanson then drove to Cooks' home on the 6400 block of South Bishop Street in Chicago, and called Cooks. Shortly thereafter, another vehicle pulled alongside Hanson's, and a man asked if Hanson "was the one." At that point, a man Hanson identified in court as defendant exited the other vehicle, entered Cooks' home, and returned with a plastic bag. Defendant entered Hanson's vehicle's passenger seat and exchanged the bag, which contained a firearm, for the money. Hanson did not present defendant with a Firearm Owner's Identification (FOID) card before the exchange. Defendant exited, and Hanson drove to meet with the ATF agents, where he returned the surveillance equipment and provided the firearm to the agents.

¶ 6     Hanson identified People's Exhibit No. 2 as a disk containing a video recording that accurately depicted the firearm sale. The State published portions of the video to the court.

_____

[1] Defendant has another pending appeal from the denial of his post-conviction petition, which we resolve in a separate Rule 23 order also filed today. *People v. Lewis*, 2022 IL App (1st) 192476-U.

¶ 7    The video, included in the record on appeal, depicts Hanson sitting in the driver's seat of a vehicle. Another vehicle approaches Hanson's vehicle's passenger side, and Hanson rolls down the passenger window. The driver of the other vehicle says, "you the one that wanted it?" Hanson replies "yeah." Shortly thereafter, Hanson makes a phone call and relays that someone has entered a nearby house "to go get it," and that individual was now approaching Hanson's vehicle. He hangs up, and a man enters the passenger seat. Hanson asks the man where "Leon" is. The camera is pointing at the man in passenger seat from a close distance, and his face is clearly visible without obstruction. That person remains in the vehicle for approximately one minute, during which he hands Hanson an object that cannot be seen on the video. Hanson makes a phone call and complains to the recipient that the object is not "new." The person in the passenger seat exits, and Hanson states into the phone, "I gave your man the money." Hanson then drives away. He hangs up and, a short time later, makes another call, during which he describes his location to the recipient. The video then depicts Hanson continuing to drive until he stops and turns off the camera.[2]

¶ 8    Bollenberg testified that he worked as an ATF agent in February 2012. On February 26, 2012, Hanson informed Bollenberg's partner, agent Jason Schoenecker, that Cooks offered to sell Hanson a firearm. Bollenberg and other ATF agents met with Hanson and provided him money and surveillance equipment. The agents also searched Hanson's vehicle for any contraband before the purchase, finding nothing. During the purchase, Bollenberg and his partner were parked nearby, and they followed Hanson afterwards, never losing sight of Hanson's vehicle after locating it a block away from the purchase location. Following the purchase, Bollenberg and other agents

---

[2] The State published an initial section of the video on direct examination, and published additional footage on redirect.

met with Hanson and recovered the surveillance equipment and the firearm, a nine-millimeter pistol.

¶ 9    The State entered certified statements of conviction for defendant in cases No. 10 CR 13615 and No. 10 CR 20510, both for residential burglary. (The record does not reveal the dates upon which the offenses charged in these cases were committed, but we must presume from the wide gap in case numbers that they occurred on separate dates.) Defendant pleaded guilty to both offenses on December 30, 2010. The State also entered a stipulation that no state agency ever issued defendant a FOID card.

¶ 10    The circuit court merged the remaining counts and found defendant guilty on count II for AHC (720 ILCS 5/24-1.7 (West 2012)). On July 31, 2014, the court denied defendant's motion for a new trial, and after a hearing, sentenced him to 12 years' imprisonment. The record does not indicate that defendant filed a motion to reconsider sentence. Defendant did not file a notice of appeal within 30 days of the sentencing order.

¶ 11    At a later date, defendant filed a motion to file a late notice of appeal, which the circuit court denied on January 16, 2015. On February 27, 2015, he filed another motion to file a late notice of appeal, which the circuit court also denied.

¶ 12    On March 2, 2017, defendant filed a *pro se* postconviction petition, alleging in relevant part that trial counsel was ineffective for not filing a timely notice of appeal. He later filed separate motions to first supplement, then amend the petition. The record does not indicate that the circuit court ruled on either motion, but on May 12, 2017, the court advanced the petition to the second stage, and appointed the public defender to represent the defendant.

¶ 13    On July 29, 2019, the State moved to dismiss the postconviction petition. On October 7, 2019, during argument on the motion, the State specified that its motion to dismiss did not address

defendant's claim for ineffective assistance for not filing a timely notice of appeal, which the State intended to address at a later date. The court continued the matter for further proceedings on defendant's ineffective assistance for failure to file a timely notice of appeal issue, but granted the State's motion as to all other claims in the petition.

¶ 14    On January 21, 2020, the circuit court granted defendant's postconviction claim for ineffective assistance for not filing a timely notice of appeal, and, as a remedy, permitted the filing of a late notice of appeal, six years after defendant's sentencing. See *People v. Ross*, 229 Ill. 2d 255, 271 (2008) (holding that "when a postconviction petitioner demonstrates that defense counsel was ineffective for failing to file a notice of appeal, the trial court may allow the petitioner leave to file a late notice of appeal"). This appeal followed.[3]

¶ 15                                    ANALYSIS

¶ 16    On appeal, defendant argues that the evidence at trial was insufficient to sustain his conviction for AHC because his two prior convictions were entered on the same day, and thus he was not convicted two or more "times" of predicate offenses, as the AHC statute requires.

¶ 17    Typically, when considering a sufficiency of the evidence claim, the reviewing court will construe the evidence in the light most favorable to the State and determine whether any rational factfinder could have found the defendant guilty beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. Here, however, there are no factual disputes, and the issue is a pure question of law, meaning our review is *de novo*. *People v. Lucas*, 231 Ill. 2d 169, 174 (2008).

¶ 18    Defendant's claim requires interpretation of the AHC statute. When interpreting a statute, a court's "primary objective is to ascertain and give effect to legislative intent, the surest and most

_____

[3] Defendant filed the late notice of appeal on January 21, 2020. The circuit court erroneously entered an order denying the late notice on January 31, 2020, but struck this order on March 19, 2021, and the appeal has since proceeded pursuant to the court-permitted late notice.

reliable indicator of which is the statutory language itself, given its plain and ordinary meaning." *People v. Clark,* 2018 IL 122495, ¶ 8. When the language is "clear and unambiguous, we must apply it as written." *Id.* The fact that the legislature included certain language in one provision but did not include it in another should be interpreted as an indication that the legislature intentionally excluded the language in the latter section. See *People v. Hunter*, 2017 IL 121306, ¶¶ 48-51 (citing *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999) ("It is well established that, by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended.").

¶ 19 Here, defendant claims the evidence did not establish that he was convicted two or more "times" of predicate offenses, as the AHC statute requires. The statute reads in relevant part, "A person commits the offense of being an armed habitual criminal if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times" of certain enumerated offenses. 720 ILCS 5/24-1.7 (West 2012).

¶ 20 The record shows that on December 30, 2010, defendant was convicted of two charges of residential burglary, predicate offenses under the AHC statute, which the State charged in separate cases.

¶ 21 We find this record was sufficient to establish that defendant was convicted of predicate offenses two times, as required by the AHC statute. While "times" is not specifically defined in the AHC statute, a review of other statutes concerning recidivism demonstrates that when the legislature intends to require sequential entry of convictions, it will make this requirement explicit in the statute. Specifically, in section 730 ILCS 5/5-4.5-95(a) of the Uniform Code of Corrections, multiple provisions regarding whether a new offense triggers recidivist penalties state that a new offense cannot be considered for enhancement purposes unless it was "committed after conviction"

of the relevant previous offense. 730 ILCS 5/5-4.5-95(a)(4)(A)-(D), (b)(1)-(3) (West 2012). The AHC statute does not include the "committed after conviction" requirement. 720 ILCS 5/24-1.7 (West 2012). We must interpret this absence as intentional, and apply the AHC statute to not require sequential convictions, meaning defendant's two predicate convictions here satisfied the two or more times requirement despite being entered on the same day. See *In re K.C.*, 186 Ill. 2d at 549-50.

¶ 22   This interpretation is consistent with recent precedent. See *People v. Patterson*, 2018 IL App (1st) 160610, ¶¶ 26-31 (concluding that AHC does not contain a sequential requirement, and two convictions in separate matters entered on the same day satisfies the "times" element, in the context of a vagueness challenge to AHC's constitutionality in the defendant's postconviction petition). We note that the *Patterson* court decided the AHC statute's language was clear and unambiguous on its face. *Id.* ¶¶ 28-29. While we do not adopt this specific methodology, and believe consideration of other recidivist statutes is necessary to ascertain the legislature's intent here, we agree with the *Patterson's* court's conclusion. Indeed, despite finding that the language was clear and unambiguous, the *Patterson* court still analyzed other statutes in arriving at its conclusion, and noted that, "Because the legislature included the limiting language regarding sequential and separate convictions" in certain statutes "but did not include any similar language in the AHC statute, we must conclude that the legislature intentionally refrained from imposing such a requirement in the AHC statute." *Id.* ¶ 31.

¶ 23   Defendant attempts to distinguish *Patterson* by noting that the defendant there brought a vagueness challenge to the constitutionality of the AHC statute in a postconviction petition, while here defendant challenges the sufficiency of the evidence on direct appeal. This difference in the procedural posture does not alter our analysis, however, because the lone issue defendant raises

here is whether the AHC statute's "times" element can be satisfied by two convictions in separate cases entered on the same day, the precise issue addressed by the *Patterson* court.

¶ 24    Defendant also encourages us not to follow *Patterson* by citing to other potential methods of statutory interpretation, including the rule of lenity, analysis of the general definitions of the words "total," "times" and "habit," and a citation *to People v. Nesbit*, 398 Ill. App. 3d 200 (2010), where the Third District used the term "occasions" instead of "times" while discussing the AHC statute. See *People v. Nesbit*, 398 Ill. App. 3d 200, 202-03 (2010). These arguments fail, however, because they do not account for the legislature's exclusion of a sequential requirement in the AHC statute, which, given the circumstances described above, we must interpret as intentional. See *Hunter*, 2017 IL 121306, ¶¶ 48-51. Thus, having found that the legislative intent is clear in light of this exclusion, the rule of lenity does not apply. See *People v. Gaytan*, 2015 IL 116223, ¶ 39 (rule of lenity applies when the reviewing court finds a statute is ambiguous *after* applying canons of statutory interpretation). We also need attempt to divine deeper meaning from the general terms of the statute such as "total" or "habit," where conclude that the legislative intent to exclude a sequential requirement in the AHC statute is clear in light of its inclusion in other statutes.

¶ 25    Finally, defendant argues that the AHC statute's overarching goal is to limit recidivism, and that intent cannot be furthered without a sequential requirement, as a defendant cannot be a recidivist unless he reoffends after an earlier conviction is entered. This argument also fails, however, because we find that the legislative intent to omit a sequential entry requirement in AHC is clear here, and our task in statutory interpretation "is to ascertain and give effect to legislative intent." *Clark*, 2018 IL 122495, ¶ 8. If the legislature later decides that the AHC statute as written does not effectively target recidivist offenders, it may amend the statute accordingly.

¶ 26                                CONCLUSION

¶ 27    The AHC statute does not require that a defendant's two predicate convictions be sequential, and therefore the evidence at trial here was sufficient to establish defendant's guilt.

¶ 28    Affirmed.